## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re<br><br>CAH ACQUISITION COMPANY 12, LLC<br><br>Debtor. | Case No.: 19-10641<br><br>Chapter 11 |

### DEBTOR'S EMERGENCY MOTION
### PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), AND 507(a)
### FOR AUTHORITY TO PAY PREPETITION WAGES

CAH Acquisition Company 12, LLC, debtor and debtor-in-possession in the above-captioned case ("Debtor"), files this motion ("Motion") for entry of an order under 11 U.S.C. §§ 105, 363 and 507 authorizing Debtor to (i) pay prepetition wages, salaries, and other cash compensation to its employees; (ii) pay payments for which prepetition payroll deductions, contributions, withholdings, garnishments or taxes were withheld; (iii) pay all prepetition employee-funded and other insurance premiums, and (iv) pay all processing costs and administrative expenses relating to the foregoing.

In support of this Motion, Debtor states:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

2. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought include 11 U.S.C. §§ 105, 363, 507, and Federal Rule of Bankruptcy Procedure 6003.

## BACKGROUND

4. On April 1, 2019 (the "Petition Date"), Debtor filed its voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court (the "Bankruptcy Court").

5. Debtor operates Fairfax Community Hospital ("Hospital"), a 15-bed Critical Access Hospital, located in Fairfax, Oklahoma. "Critical Access Hospital" is a designation given to eligible rural hospitals by the Centers for Medicare and Medicaid Services which is limited to hospitals having 25 or fewer acute care in-patient beds and which are located more than 35 miles from another hospital, among other requirements.

6. Debtor continues to operate its business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. The United States Trustee has not appointed any official committees in this case, and no request has been made for the appointment of a trustee or examiner.

7. Debtor currently employs 47 persons (collectively, "Employees").

8. In the ordinary course of business, Employees are paid every two weeks in arrears. The Employees have not been paid their prepetition wages and salaries for approximately 9 weeks prior to the Petition Date.

9. By this Motion, the Debtor is proposing to pay the payroll that was due to be paid on March 29, 2019 (which covers pay period March 10 through March 23) (the "March 29 Payroll") as well as the payroll due to be paid on April 12, 2019 (which covers pay period March 24 through April 6) (the "April 12 Payroll"). The March 29 Payroll calls for a total payment of $108,109, which consists of $74,186 of net compensation and $33,923 of payroll tax obligations.

2

It is anticipated that checks for the March 29 Payroll would be cut and immediately delivered to the Employees upon entry of the orders approving this Motion and the proposed Section 364 Financing.

10. The April 12 Payroll consists of nine (9) pre-petition payroll days and five (5) post-petition payroll days. The April 12 Payroll is expected to consist of a total of approximately $77,298 of pre-petition wages, consisting of $53,043 of pre-petition net compensation and $24,255 of pre-petition payroll tax obligations. It is anticipated that checks for the April 12 Payroll will be delivered to the Employees on April 12, 2019. The April 12 Payroll is also expected to include a total of $47,027 in post-petition wages, consisting of $32,271 of post-petition net compensation and $14,756 of post-petition payroll tax obligations.

11. The Debtor is, by this Motion, seeking to pay one Employee pre-petition wages in excess of the $13,650.00 statutory cap imposed by Bankruptcy Code Section 507(a)(4). Such individual is a physician's assistant and a key employee of the Debtor. This Employee is owed $18,866 in gross pre-petition compensation for the March 29 Payroll, and $12,127.99 in gross pre-petition compensation for the April 12 Payroll, for total pre-petition compensation of $30,994. Such individual's April 12 Payroll will also include gross post-petition compensation in the amount of $6,738. The amounts being sought to be paid to this individual are part of, and not in addition to, the amounts set forth in paragraphs 9 and 10 hereof.

12. The Debtor is not seeking to take any deductions for medical and dental benefits, additional life insurance, 401K contributions or any other Employee-related benefit plan (collectively, the "Benefits Deductions"). The Debtor has been informed by Employees that

Benefits Deductions have not been handled appropriately in the last several months. Multiple Employees have complained that although Benefits Deductions have been withheld from paychecks, health care providers have informed them their benefits were not available. Benefit Deductions were historically withheld and paid to EmpowerHMS, the Debtor's parent entity, which was responsible for administering the benefits. It is believed that EmpowerHMS has failed to actually provide the benefits for quite some time. Since the Debtor is unable to ensure that EmpowerHMS will properly apply Benefits Deductions, the Debtor is not withholding those amounts from the Employees' paychecks. Additionally, the Debtor is not proposing to pay out paid time off ("PTO") in the current pre and post-petition amounts disclosed in this Motion. There is no documented information available on the status of the Employees' PTO balances, and the Debtor has no way of verifying whether or not Employees have PTO available for use.

13. A summary of the upcoming payroll for current employees ("Payroll") is attached hereto as Exhibit "A."

**BASIS FOR RELIEF REQUESTED**

14. This Motion seeks approval to pay pre-petition wages in order to avoid potentially irreparable harm to the Employees, the Hospital and its patients and the reorganization efforts of Debtor.

15. Section 363(b)(1) of the Bankruptcy Code provides:

> The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

11 U.S.C. § 363(b)(1). This section gives the court "broad flexibility in tailoring its orders to meet a wide variety of circumstances." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174,

4

175 (Bankr. S.D.N.Y. 1989). Before the Court can apply section 363(b) in its favor, the debtor must "articulate some business justification, other than mere appeasements of major creditors." *Id.* (the debtor gave "sound business reasons for its decision to pay pre-petition wages," those reasons being that it was necessary to "serve and protect its business and ultimately reorganize, retain its currently working Employees and maintain positive employee morale"). Here, Debtor's request to pay prepetition amounts related to the employee obligations satisfies this standard because the failure to do so almost certainly would have a material adverse impact on Debtor's day-to-day operations, the care for Debtor's patients and the continuing viability of this Critical Access Hospital.

16. Section 105(a) of the Bankruptcy Code further provides in pertinent part:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

This equitable power is granted to effect the policy of chapter 11 to rehabilitate the debtor, *Ionosphere Clubs*, 98 B.R. at 176-77, and to "create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately." *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 287 (S.D.N.Y. 1987).

17. Under the "doctrine of necessity" or "necessity of payment" rule, first articulated in *Miltenberger v. Logansport Ry. Co.*, 106 U.S. 286 (1882), bankruptcy courts can exercise these equitable powers "to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176; *see also In re Lehigh & N.E. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (payment of

5

a claim arising before reorganization is authorized if it is "essential to the continuing operation of the [debtor]");

18.     The doctrine of necessity permits a deviation from the equal treatment of creditors because "otherwise there will be no reorganization and no creditor will have an opportunity to recoup any part of its prepetition claim." *In re United Am., Inc.*, 327 B.R. 776, 781 (Bankr. E.D. Va. 2005); *In re NVR L.P.*, 147 B.R. 126, 128 (Bankr. E.D. Va. 1992) (necessity of payment exception "well-established in bankruptcy common law").

19.     While § 105(a) alone is sufficient, *see Ionosphere Clubs*, 98 B.R. at 176, other courts have applied it in conjunction with §§ 1107(a) and 362(d) to allow payment of prepetition claims under the doctrine of necessity. *See In re CoServ, L.L.C.*, 273 B.R. 487, 496 (Bankr. N.D. Tex. 2002) (holding that there are occasions when the debtor in possession's fiduciary duty to protect and preserve the estate "can only be fulfilled by the preplan satisfaction of a prepetition claim"); *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (opining that the debtor-in-possession and its "critical vendors" could request relief under § 362(d) for cause, such cause "being the urgency and necessity of paying the prepetition claims, such payment being the only means of protecting the going concern value of the operating business in Chapter 11").

20.     Further, Rule 6003 of the Federal Rules of Bankruptcy Procedure provides that the bankruptcy court, if "necessary to avoid immediate and irreparable harm," may grant relief early in a case to "use, sell, lease, or otherwise incur an obligation regarding property of the estate, *including a motion to pay all or part of a claim that arose before the filing of the petition . . . .*" (emphasis added). Thus, Rule 6003 specifically contemplates granting relief to honor

6

prepetition claims where necessary to preserve the estate and the debtor's prospects for reorganization and provides guidance on whether such authority should be granted immediately or delayed. As set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor's Hospital and its patients. Accordingly, immediate approval is appropriate.

21.   Debtor's Employees, patients and the governing bodies of Fairfax, Oklahoma and surrounding communities are understandably anxious about the bankruptcy filing. Many of Debtor's Employees rely exclusively on their wages from Debtor to meet their monthly financial obligations. Debtor believes that it would cause serious hardship upon its Employees and detrimental to the morale of the Employees to deny them payment of their wages and salaries during the pendency of this bankruptcy case. If the payment of their wages is disrupted or disallowed by virtue of the bankruptcy case, it will adversely affect the Employees' own financial situation, causing some, perhaps a significant number, of the Employees to seek other employment which would substantially impair Debtor's reorganization efforts and jeopardize the continuation of the Hospital.

22.   The continued productive participation by its Employees is crucial to the ability of the Debtor to reorganize and for the Hospital to remain open to serve the citizens of Oklahoma. Consequently, Debtor believes that it is in the best interest of this bankruptcy estate and the creditors as well as the community that these Employees receive their compensation on a timely basis, which entails post-petition payment of their prepetition claims.

23. Finally, Debtor believes the vast majority of the prepetition wage obligations seeks authority to fund would be entitled to priority treatment under §§ 507(a) and (a)(5) of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, Debtor respectfully requests that the Court enter an Order authorizing it to pay the upcoming Payroll, including the prepetition portions, and granting such further relief as is just and proper.

DOERNER, SAUNDERS, DANIEL & ANDERSON, L.L.P.

By: */s/ Sam G. Bratton II*
Sam G. Bratton II, OBA No. 1086
J. Patrick Mensching, OBA No. 6136
Williams Center Tower II
Two West Second St., Suite 700
Tulsa, Oklahoma 74103
Telephone (918) 582-1211
Facsimile (918) 591-5360
sbratton@dsda.com
pmensching@dsda.com

*Prospective Counsel for Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of April, 2019, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF Registrants in the above case.

*/s/ Sam G. Bratton II*
Sam G. Bratton II

4967335.1

|  |  | Pre Petition | | Post Petition |
|---|---|---|---|---|
| Paycycle | | 3.10.19 - 3.23.19 | 3.24.19 - 4.1.19<br>Estimated 9 of 14 days | 4.2.19 - 4.6.19<br>Estimated 5 of 14 days |
| Compensation (Net) | | $74,186 | $53,043 | $32,271 |
| Payroll Tax Obligation | | $33,923 | $24,255 | $14,756 |
| Total: | | **$108,109** | **$77,298** | **$47,027** |

\* Estimate is based on 3.10.19 - 3.23.19 pay period hours
3.24.19 - 4.6.19 is full pay period (2nd part of Pre-Petition + Post Petition)

| Gross per employee over $13,650.00* | | | | Post Petition |
|---|---|---|---|---|
|  |  | Pre Petition | | |
| Name | Title | Gross | Gross | Gross |
| Thomas Engle | PHYSICIAN ASST | $18,866 | $12,127.99 | $6,737.77 |
|  | Total | **$18,866** | **$12,128** | **$6,738** |


EXHIBIT A