**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 19-01697-5-JNC |
| CAH ACQUISITION COMPANY 12, LLC, d/b/a ) | |
| FAIRFAX COMMUNITY HOSPITAL, ) | Chapter 11 |
| ) | |
| **Debtor.** ) | |
| ) | |

**MOTION OF TRUSTEE FOR (I) AN INTERIM ORDER (A) AUTHORIZING THE TRUSTEE, ON BEHALF OF THE DEBTOR, TO OBTAIN SECURED POST-PETITION FINANCING PURSUANT TO SECTION 364(c)(1) AND (2) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001, (B) GRANTING SUPER-PRIORITY ADMINISTRATIVE EXPENSE TREATMENT AND CERTAIN LIENS ON THE DEBTOR'S PROPERTY TO THE LENDER AS SECURITY FOR THE OBLIGATIONS HEREUNDER, AND (C) SCHEDULING FINAL HEARINGS PURSUANT TO BANKRUPTCY RULE 4001, AS WELL AS (II) A FINAL ORDER AUTHORIZING THE TRUSTEE, ON BEHALF OF THE DEBTOR, TO OBTAIN SECURED POST-PETITION FINANCING ON A FINAL BASIS**

Thomas W. Waldrep, Jr., the trustee (the "Trustee") for CAH Acquisition Company 12, LLC d/b/a Fairfax Community Hospital (the "Debtor"), by and through his undersigned counsel, and pursuant to Sections 105(a), 364(c)(1) and 364(c)(2) of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rules 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby moves this Court for (i) the entry of an interim Order, substantially in the form attached hereto as Exhibit A (the "Interim Financing Order"), (a) authorizing the Trustee to execute, deliver, and/or obtain credit on behalf of the Debtor as set forth in this Motion and in that certain Promissory Note and Security Agreement (the "Promissory Note") to be executed by the Trustee on behalf of the Debtor, as borrower, with Cohesive Healthcare Management & Consulting LLC, as lender ("Cohesive"), substantially in the form attached hereto as Exhibit B, (b) authorizing the Trustee on behalf of the Debtor to obtain a post-petition loan from Cohesive in an amount not to exceed the aggregate principal amount of

$1,100,000, with an initial funding of $78,000, upon entry of the Interim Financing Order (the "Loan"), (c) granting to Cohesive super-priority administrative expense treatment of its claim under the Loan and liens on some of the Debtor's property, as further described herein, to secure the repayment of the Debtor's obligations under the Promissory Note, subject to a Carve Out (as defined and described herein), and (d) scheduling a hearing on final approval of the Loan and Promissory Note and approving the form and manner of notice; as well as (ii) the entry of a final Order (the "Final Financing Order"),[1] authorizing the Trustee on behalf of the Debtor to obtain the aforesaid secured post-petition financing on a final basis. In support of this Motion, the Trustee respectfully represents as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these proceedings and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The relief sought in this Motion is based upon Sections 105(a) and 364(c)(1) and (2) of the Bankruptcy Code, and Bankruptcy Rules 4001(c) and 9014.

## BACKGROUND

1. On March 17, 2019 (the "Petition Date"), the Debtor filed a now-dismissed voluntary petition for relief under Chapter 11 of the Bankruptcy Code before this Court, Case No. 19-01229-5-JNC.

2. On March 18, 2019, the Court entered an Order approving the appointment of the Trustee [Case No. 19-01229-5-JNC, Dkt. No. 4]. The Trustee was the duly appointed, qualified, and acting trustee of the Debtor's estate.

---

[1] Together with the Interim Financing Order, collectively, the "Financing Orders."

3. On March 29, 2019, the Court dismissed the first voluntary petition on the basis that a state-court receiver in Oklahoma had exclusive authority to file a bankruptcy case for the Debtor.

4. On April 1, 2019, the state-court receiver filed a Chapter 11 bankruptcy petition for the Debtor in the Bankruptcy Court for the Northern District of Oklahoma, Case No. 19-10641-R (the "Oklahoma Case").

5. On April 11, 2019 (the "Transfer Date"), in the case of an affiliated debtor hospital, this Court ordered the transfer of the Oklahoma Case to this judicial district pursuant to Bankruptcy Rule 1014(b) [Case No. 19-00730-5-JNC, Dkt. No. 133]. This case was opened as a result of that Order.

6. On April 12, 2019, the Trustee was re-appointed to administer the estate of this Debtor. The Trustee is the duly appointed, qualified, and acting trustee of the Debtor's estate.

7. The Debtor owns Fairfax Community Hospital ("Fairfax"), a fifteen-bed, for-profit, Critical Access Hospital in Fairfax, Oklahoma. Prior to the Petition Date, Fairfax provided acute care, swing bed, emergency medicine, radiology, physical rehabilitation, laboratory, and related outpatient ancillary services to residents in Fairfax and in surrounding communities. Fairfax also operates the on-site Fairfax Rural Health Clinic and the off-site Pawnee Rural Health Clinic (together, the "Clinics"), both of which are Provider-Based Rural Health Clinics. The Pawnee Rural Health Clinic is located in the nearby city of Pawnee, Oklahoma.

8. Upon information and belief, the Debtor is currently owned by HMC/CAH Consolidated, Inc. ("HMC") (20% interest) and Health Acquisition Company, LLC ("HAC," and together with HMC, the "Owners") (80% interest). Upon information and belief, the Owners are in the business of acquiring and operating a system of acute care hospitals located in rural

3

communities that are certified by The Centers for Medicare and Medicaid Services ("CMS") as Critical Access Hospitals. Upon information and belief, the Owners own and/or operate rural hospitals in several states, including Kansas, North Carolina, Missouri, Tennessee, and Oklahoma.

*Pre-Petition Management of Fairfax*

9. Upon information and belief, through and until January 7, 2019, EmpowerHMS LLC ("EmpowerHMS") managed Fairfax under one or more contracts with the Debtor. EmpowerHMS is a Delaware limited liability company headquartered in Kansas City, Kansas. Upon information and belief, EmpowerHMS formerly provided the financial support, legal support, centralized business office, and revenue cycle and IT services necessary to Fairfax's operations.

10. Upon information and belief, as of January 7, 2019, EmpowerHMS no longer operated or managed Fairfax, the management of which was transferred by EmpowerHMS to iHealthcare pursuant to (i) a *Management and Administrative Services Agreement* (the "Terminating Management Agreement") dated as of January 7, 2019, by and between the Debtor and Manager; (ii) an *EHR and RCM Services Agreement* dated as of January 7, 2019 by and between the Debtor and Consultant; and (iii) an *IT Help Desk Support & Daily Backup Services Agreement* also dated as of January 7, 2019 by and between the Debtor and Consultant (together with the *EHR and RCM Services Agreement*, collectively, the "Terminating Services Agreements").

11. Upon information and belief, after January 7, 2019, iHealthcare attempted to begin to manage Fairfax, but such efforts were delayed by a number of transition and financial issues with EmpowerHMS.

4

12. Upon information and belief, on or around February 27, 2019, a receiver was appointed by an Oklahoma state court to manage Fairfax.

13. Upon information and belief, that receiver has maintained Fairfax in an operational status and may have engaged, or was in the process of engaging, a healthcare management company as of the Transfer Date.

*Post-Petition Events*

14. Since his initial appointment on March 18, 2019 until the dismissal of the initial petition on March 29, and since his re-appointment in this transferred case, the Trustee has been administering the estate of the Debtor, as well as the seven other affiliated debtors in bankruptcy cases currently pending before this Court (collectively, the "Affiliated Debtors"). See *Order Directing Joint Administration of Chapter 11 Cases*, Case No. 19-00730, Dkt. No. 75.

15. The Trustee has concluded that in order to preserve the property of the Debtor's estate, to prevent further loss to the estate, and to maximize the value of the assets of Fairfax for the benefits of creditors of Fairfax, Fairfax must be restored to and maintained in a healthy operational status. Fairfax must keep its license as a Critical Access Hospital to preserve and maintain Fairfax's drugs, equipment, and supplies; preserve and safeguard patient records; and, most importantly, continue providing for the public health of residents of the Fairfax, Oklahoma area, many of whom depend on Fairfax and the Clinics as the only avenue for emergency healthcare.

*<u>Pre-Petition Secured Creditors of the Debtor</u>*

16. Following a review of the UCC-1 filing statements filed against the Debtor with the Delaware Division of Corporations[2], the following creditors purport to hold liens or security interests against substantially all of the Debtor's property prior to the Petition Date:

   i. HMC/CAH Note Acquisition, LLC, by virtue of a UCC-1 Financing Statement filed on or about January 27, 2016, purports to hold a blanket lien on the personal property of the Debtor. Based on the testimony of Paul Nusbaum before this Court on March 28, 2019, the Trustee believes this UCC-1 was filed by the shareholders of HMC/CAH following the purchase of a note owed to Gemino Healthcare Finance.

   ii. GEL Funding, LLC, by virtue of a UCC-1 Financing Statement filed on or about March 1, 2019, purports to hold a blanket lien on the personal property of the Debtor. The Trustee contends that there is a bona fide dispute as to the validity of a secured claim asserted by this creditor, as the UCC-1 Financing Statement was filed within ninety days of the Petition Date.

17. The Trustee is not aware of any other purported secured creditors at the time of this Motion. The Trustee believes that the real property, fixed assets, and fixtures held in the Debtor's estate are unencumbered.

*<u>Post-Petition Events</u>*

18. Since his initial appointment on March 18, 2019 until the dismissal of the initial petition on March 29, and since his re-appointment in this transferred case, the Trustee has been administering the estate of the Debtor, as well as the seven other affiliated debtors in bankruptcy cases currently pending before this Court (collectively, the "<u>Affiliated Debtors</u>"). See *Order Directing Joint Administration of Chapter 11 Cases*, Case No. 19-00730, Dkt. No. 75.

19. The Trustee has concluded that in order to preserve the property of the Debtor's estate, to prevent further loss to the estate, and to maximize the value of the assets of Fairfax for the benefits of creditors of Fairfax, Fairfax must be restored to and maintained in a

---

[2] The Debtor is a Delaware limited liability company.

6

healthy operational status. Fairfax must keep its license as a Critical Access Hospital to preserve and maintain Fairfax's drugs, equipment, and supplies; preserve and safeguard patient records; and, most importantly, continue providing for the public health of residents of the Fairfax, Oklahoma area, many of whom depend on Fairfax and the Clinics as the only avenue for emergency healthcare. Accomplishing these objectives will require post-petition financing.

20. By separate Motion being filed concurrently herewith, the Trustee is seeking authority to employ Cohesive as the management company for this Debtor and three other Affiliated Debtors located in Oklahoma: CAH Acquisition Company #4, Inc. d/b/a Drumright Regional Hospital; CAH Acquisition Company 7, LLC. d/b/a Prague Community Hospital; and CAH Acquisition Company 16, LLC d/b/a Haskell County Community Hospital.

21. In addition, the Trustee is filing identical motions to the instant motion to obtain post-petition financing from Cohesive for two of the Affiliated Debtors located in Oklahoma: CAH Acquisition Company #4, Inc. d/b/a Drumright Regional Hospital and CAH Acquisition Company 7, LLC. d/b/a Prague Community Hospital.

*Post-Petition Financing for Fairfax*

22. In order to operate Fairfax, the Trustee must obtain post-petition operating capital for the Debtor. As of the Petition Date, the Debtor's estate held grossly insufficient operating capital[3] to sustain the payment of employee wages and salaries, purchase supplies and inventory, pay vendors, or make payments as required under state or federal laws or regulations.

23. Recognizing the truly distressed setting of Fairfax, coupled with the fact that the Trustee does not have an unlimited budget or timeline in this case, the Trustee has concluded, in his business judgment and after considering several options for obtaining post-

---

[3] Upon assumption by the Trustee of the operating accounts for the Debtor, these accounts held a combined amount of less than $40,000.

petition financing, that Cohesive offers the best option for obtaining post-petition financing for Fairfax.

24. Cohesive's familiarity with the operational and financial status of two of Fairfax's affiliate hospitals has led to a debtor-in-possession financing proposal (the "DIP Financing Proposal") that the Trustee believes fully recognizes the present condition of Fairfax, and realistically projects the revenues to be realized from future operations of Fairfax under Cohesive's management. Further, the Trustee believes that the Debtor's estate would benefit from the support of a secured lender that also serves as the management company responsible for the day-to-day operations of Fairfax.

### *Summary of the DIP Financing Proposal*

25. The following is a summary of the principal terms and conditions of the DIP Financing Proposal from Cohesive:

| | |
|---|---|
| Borrower: | The Debtor (the "Borrower") as debtor in Chapter 11 proceedings pending in the United States Bankruptcy Court for the Eastern District of North Carolina (the "Bankruptcy Court"), Case Number 19-01697-5-JNC (the "Bankruptcy Case") |
| Lender: | Cohesive Healthcare Management & Consulting LLC (the "Lender") |
| Loan: | Up to $1,100,000 |
| Interest Rate: | 5.5% |
| Collateral: | A security interest in (i) All of the Borrower's Accounts, as defined by N.C. Gen. Stat. § 25-9-102(a)(2), which accrue after the date the Promissory Note is executed by Borrower and (ii) all present and future products and proceeds of the Collateral. Such security interests and liens created and granted to Lender to secure the amounts due under the Promissory Note are: (a) pursuant to 11 U.S.C. § 364(c)(2), first, prior, perfected, and superior to any security, mortgage, collateral, interest, lien, or claim to the Collateral and (b) |

8

|  |  |
|---|---|
|  | subject to a carve out (the "Carve Out") for payment of professional fees in the Debtor's case. |
| Additional Security: | Lender shall have an allowed administrative expense claim in the Bankruptcy Case in the amount of any unpaid amount under the Promissory Note (the "Super-Priority Claim") with priority pursuant to 11 U.S.C. § 364(c)(1) and otherwise over all administrative expense claims and unsecured claims made against the Borrower, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in Sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), and 1114 of the Bankruptcy Code; provided, however, that the Super-Priority Claim shall not have priority over, and shall be subordinate to, the Carve Out. |

### *Necessity of the Debtor's Use of Post-Petition Financing*

26. As previously stated, the Debtor does not have available sources of working capital to carry on the operation of its business without the funds available under the DIP Financing Proposal. The Debtor needs funds to pay the ongoing costs of operating its business, paying its employees, and insuring, preserving, repairing, and protecting all its tangible assets, and thus it has an immediate need for the Loan. Furthermore, the Debtor needs the financing provided under the DIP Financing Proposal to purchase goods and services, meet the needs of its patients, pay its employees and ordinary course operational expenses, and ensure all vendors that extend post-petition credit that they will be paid, all of which are necessary to supply the healthcare services that the Fairfax, Oklahoma community expects to receive from the Debtor.

27. If not permitted to obtain the funds available under the DIP Financing Proposal with Cohesive, the going concern value of the Debtor's business will be lost, and the fair market value of the estate's assets will be significantly reduced, resulting in financial loss to all parties in interest. To that end, the Trustee requests the Court to authorize the terms of the DIP Financing Proposal as set forth herein.

*Efforts to Obtain Financing*

28. Following the Trustee's appointment and before agreeing to enter into any post-petition financing arrangement with Cohesive, the Trustee explored financing options with several other entities. After the Trustee's search for financing, the Trustee believes that the terms of Cohesive's DIP Financing Proposal offer it the best available financing package at this time, based upon interest rate, commitment amount, and other factors. The Trustee respectfully submits that the terms and conditions of the DIP Financing Proposal are fair and reasonable and were negotiated with Cohesive in good faith and at arms' length.

### RELIEF REQUESTED

29. Section 364(c) of the Bankruptcy Code provides that a trustee or debtor-in-possession, having been unable to obtain post-petition unsecured credit as an administrative expense, may seek authorization to obtain credit or incur debt (1) on the basis that the credit obtained shall be treated as a super-priority administrative expense, (2) secured by unencumbered property of a the estate, or (3) secured by a junior lien on encumbered property of the estate, subject to notice and a hearing. 11 U.S.C. § 364(c)(1) through (3).

30. The Trustee has thus far been unable to obtain unsecured financing to meet the Debtor's needs for post-petition operating capital.

31. After considering other options, the Trustee has negotiated a DIP Financing Proposal with Cohesive that, subject to the terms of the Promissory Note attached hereto, seeks to provide Cohesive with the super-priority status, liens, and security interests upon estate property in exchange for the post-petition financing as further and more specifically described therein.

32. To the extent such actions against estate property require modification of the automatic stay of Section 362 of the Bankruptcy Code, the Trustee requests that the Court will modify the automatic stay as necessary.

33. Pending a final hearing, the Debtor requires immediate post-petition financing for, among other things, the purchase of new supplies, the funding of payroll obligations, the operation of its healthcare facilities, and other working capital needs. The Debtor has grossly insufficient cash on-hand to meet these obligations without the post-petition financing requested herein.

34. Rule 4001(c) of the Federal Rules of Bankruptcy Procedure permits a court to approve a trustee's request for financing during the 15-day period following the filing of a motion requesting authorization to obtain post-petition financing, "only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(c)(2). In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions. In re Simasko Prods. Co., 47 B.R. 444, 449 (Bankr. D. Colo. 1985); see also In re Ames Dep't Stores, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990). After the 15-day period, the request for financing is not limited to those amounts necessary to prevent destruction of the debtor's business; rather, a trustee is entitled to borrow those amounts that it believes prudent in the operation of its business. See, e.g., Ames Dep't Stores, 115 B.R. at 36; Simasko, 47 B.R. at 449. Under this standard, and given the Debtor's urgent and immediate cash needs, the Trustee submits that entry of the Financing Orders, in the time periods, and for the financing amounts requested herein, is appropriate.

35. For the reasons stated above, the Debtor respectfully requests that the Court grant the relief requested herein.

## NOTICE

36.     Notice of this Motion has been given via facsimile, hand delivery, electronic mail, or overnight mail to: (a) the Office of the United States Bankruptcy Administrator for the Eastern District of North Carolina, 434 Fayetteville Street, Suite 620, Raleigh, North Carolina 27601 (Attn: Marjorie K. Lynch); (b) CAH Acquisition Company 12, LLC. d/b/a Fairfax Community Hospital, PO Box 955734, Saint Louis, Missouri, 63195 (Attn: Chief Executive Officer); (c) Counsel for the Debtor, Spilman Thomas & Battle, PLLC, Rayford K. Adams, III, 110 Oakwood Drive, Suite 500, Winston-Salem, North Carolina, 27103; (d) the Debtor's thirty largest unsecured creditors on a consolidated basis; and (e) the Debtor's five largest secured creditors, including those known purported secured creditors referenced previously, on a consolidated basis. Because of the exigencies of the circumstances and the irreparable harm to the Debtor, its estate, and all parties-in-interest that will ensue if the relief requested herein is not granted, the Debtor submits that no other notice need be given.

37.     No prior motion for the relief requested herein has been made to this or any other Court.

**WHEREFORE**, the Trustees respectfully requests that the Court:

1.     Enter the Interim Financing Order, substantially in the form attached hereto as Exhibit A, (a) authorizing the Trustee to execute, deliver, and/or obtain credit on behalf of the Debtor as set forth in this Motion and in that certain Promissory Note to be executed by the Trustee on behalf of the Debtor, as borrower, with Cohesive as lender, substantially in the form attached hereto as Exhibit B, (b) authorizing the Trustee on behalf of the Debtor to obtain a post-petition Loan from Cohesive in an amount not to exceed the aggregate principal amount of $1,100,000, with an initial

funding of $78,000, upon entry of the Interim Financing Order, (c) granting to Cohesive super-priority administrative expense treatment of its claim under the Loan and liens on some of the Debtor's property, as further described herein, to secure the repayment of the Debtor's obligations under the Promissory Note, subject to the Carve Out, and (d) scheduling a hearing on final approval of the Loan and Promissory Note and approving the form and manner of notice.

2. Enter the Final Financing Order authorizing the Trustee on behalf of the Debtor to obtain the aforesaid secured post-petition financing on a final basis; and

3. Grant any such other relief as the Court may deem necessary and proper.

Respectfully submitted, this the 22nd day of April, 2019.

**WALDREP LLP**

/s/ *Thomas W. Waldrep, Jr.* _____
Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
Jennifer B. Lyday (NC State Bar No. 39871)
Francisco T. Morales (NC State Bar No. 43079)
101 S. Stratford Road, Suite 210
Winston-Salem, NC 27104
Telephone: 336-717-1440
Telefax: 336-717-1340
Email: notice@waldrepllp.com

**- and –**

**HENDREN, REDWINE & MALONE, PLLC**

Jason L. Hendren (NC State Bar No. 26869)
Rebecca F. Redwine (NC State Bar No. 37012)
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: 919-420-7867
Telefax: 919-420-0475
Email: khendren@hendrenmalone.com
rredwine@hendrenmalone.com

*Proposed Attorneys for the Trustee*

**Exhibit A**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | **Case No. 19-1697** |
| **CAH ACQUISITION COMPANY 12,** ) | |
| **LLC, d/b/a FAIRFAX COMMUNITY** ) | **Chapter 11** |
| **HOSPITAL,** ) | |
| ) | |
| **Debtor.** ) | |

**ORDER GRANTING MOTION OF TRUSTEE FOR (I) AN INTERIM ORDER (A) AUTHORIZING THE TRUSTEE, ON BEHALF OF THE DEBTOR, TO OBTAIN SECURED POST-PETITION FINANCING PURSUANT TO SECTION 364(c)(1) AND (2) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001, (B) GRANTING SUPER-PRIORITY ADMINISTRATIVE EXPENSE TREATMENT AND CERTAIN LIENS ON THE DEBTOR'S PROPERTY TO THE LENDER AS SECURITY FOR THE OBLIGATIONS HEREUNDER, AND (C) SCHEDULING FINAL HEARINGS PURSUANT TO BANKRUPTCY RULE 4001, AS WELL AS (II) A FINAL ORDER AUTHORIZING THE TRUSTEE, ON BEHALF OF THE DEBTOR, TO OBTAIN SECURED POST-PETITION FINANCING ON A FINAL BASIS**

Upon the *Motion of Trustee For (I) an Interim Order (A) Authorizing the Trustee, on Behalf of the Debtor, to Obtain Secured Post-Petition Financing Pursuant To Section 364(c)(1) and (2) of the Bankruptcy Code and Bankruptcy Rule 4001, (B) Granting Super-priority Administrative Expense Treatment and Certain Liens on the Debtor's Property to the Lender as Security for the*

*Obligations Hereunder, and (C) Scheduling Final Hearings Pursuant To Bankruptcy Rule 4001, as well as (II) A Final Order Authorizing the Trustee, on Behalf of the Debtor, to Obtain Secured Post-Petition Financing on a Final Basis* (the "<u>Motion</u>") filed by Thomas W. Waldrep, Jr., the Trustee[1] in the above-captioned Chapter 11 case, for entry of an Order pursuant to Sections 105(a), 364(c)(1) and 364(c)(2) of the Bankruptcy Code and Rules 4001(c) and 9014 of the Bankruptcy Procedure requesting authority for the Trustee to execute, deliver, and/or obtain credit on behalf of the Debtor as set forth in the Motion and in the Promissory Note to be executed by the Trustee, on behalf of the Debtor, as borrower, with Cohesive as lender, substantially in the form attached to the Motion as <u>Exhibit B</u>, (b) authorizing the Trustee, on behalf of the Debtor, to obtain a post-petition Loan from Cohesive in an amount not to exceed the aggregate principal amount of $1,100,000, with an initial funding of $78,000, upon entry of this Order, (c) granting to Cohesive super-priority administrative expense treatment of its claim under the Loan and liens on some of the Debtor's property, as further described in the Motion, to secure the repayment of the Debtor's obligations under the Promissory Note, subject to a Carve Out (as defined and described herein), and (d) scheduling a hearing on final approval of the Loan and Promissory Note and approving the form and manner of notice, as well as (ii) the entry of a Final Financing Order authorizing the Trustee, on behalf of the Debtor, to obtain the aforesaid secured post-petition financing on a final basis; and having heard the statements of counsel in support of the relief requested therein at the hearing before the Court on _____, 2019 (the "<u>Hearing</u>"); the Court having found and concluded that (i) it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (iii) venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409, (iv) notice of the Motion was sufficient under the

---

[1] All capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

15

circumstances, and (v) the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein, and this Court having determined that granting the relief requested in the Motion is in the best interests of the Debtor, its estate and its creditors; and after due deliberation and sufficient cause appearing therefor;

**IT IS ORDERED AS FOLLOWS**:

1. The Motion is **GRANTED** to the extent provided herein.

2. The Trustee is authorized execute, deliver, and/or obtain credit on behalf of the Debtor, as set forth in the Motion and in that certain Promissory Note to be executed by the Trustee on behalf of the Debtor, as borrower, with Cohesive as lender, substantially in the form attached to the Motion as Exhibit B.

3. The Trustee is authorized, on behalf of the Debtor, to obtain a post-petition Loan from Cohesive in an amount not to exceed the aggregate principal amount of $1,100,000, with an initial funding of $78,000 upon entry of this Order.

4. The Trustee is authorized on behalf of the Debtor to execute the Promissory Note.

5. Cohesive is granted a security interest in (i) all of the Borrower's Accounts, as defined by N.C. Gen. Stat. § 25-9-102(a)(2), which accrue after the date the Promissory Note is executed by Borrower and (ii) all present and future products and proceeds of the Collateral. Such security interests and liens created and granted to Lender to secure the amounts due under the Promissory Note are: (a) pursuant to 11 U.S.C. § 364(c)(2), first, prior, perfected, and superior to any security, mortgage, collateral, interest, lien, or claim to the Collateral and (b) subject to a Carve Out for payment of professional fees in the Debtor's case.

6. Cohesive shall have an allowed administrative expense claim in this case in the amount of any unpaid amount under the Promissory Note with priority pursuant to 11 U.S.C. §

364(c)(1) and otherwise over all administrative expense claims and unsecured claims made against the Borrower, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in Sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), and 1114 of the Bankruptcy Code; provided, however, that this Super-Priority Claim shall not have priority over, and shall be subordinate to, the Carve Out.

7. A further hearing (which may be a final hearing) on this Motion will be held at ___ o'clock _.m. on _____, 2019 at Courtroom # _, _____, NC _____, at which time the Court will further consider the Motion.

8. Notwithstanding the possible applicability of Fed. R. Bankr. P. 6004(g), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

9. The Trustee is hereby authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this Order.

10. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

[END OF DOCUMENT]

**Exhibit B**

PROMISSORY NOTE and SECURITY AGREEMENT
(Debtor in Possession Financing)

$_____                                                                                    _____, 2019

FOR VALUE RECEIVED, CAH Acquisition Company 12, LLC d/b/a Fairfax Community Hospital (the "Maker") promises to pay to Cohesive Healthcare Management & Consulting LLC (the "Holder"), the sum of _____ Dollars ($_____.00), or so much thereof as Holder may advance to or for the benefit of Maker in accordance with the terms hereof, plus interest at the rate of 5.5% per annum. The principal amount and all accrued interest outstanding hereunder shall be due on the first to occur of: (a) three business days after the closing of the sale of all or substantially all of the Maker's assets; (b) immediately upon conversion of the Maker's pending Chapter 11 bankruptcy case (*In re: CAH Acquisition Company 12, LLC d/b/a Fairfax Community Hospital,* U.S. Bankruptcy Court for the Eastern District of North Carolina, Case No. 19-01697 (the "Bankruptcy Case")) to one under Chapter 7 of the United States Bankruptcy Code; or (c) thirty days after confirmation of a Chapter 11 Plan of reorganization or liquidation in the Bankruptcy Case, or (d) immediately upon the dismissal of the Bankruptcy Case. As used herein, "Business Day" shall mean any day other than a Saturday, Sunday or day which shall be a legal holiday in the State of North Carolina.

The Maker may prepay this Promissory Note and Security Agreement in full or in part from time to time, without any prepayment penalty.

The Maker hereby waives demand, presentment, protest, and notice of every kind, and waives all recourse to suretyship and guarantorship defenses generally, including, but not limited to, any extensions of time for payment or performance which may be granted to the Maker, any modifications or amendments to this Promissory Note and Security Agreement, any act or omission to act by or on behalf of the Holder, and all other indulgences of any type which may be granted by the Holder to the Maker.

The Maker hereby grants to the Holder a security interest in (a) all the Collateral, whether now or hereafter existing or acquired, and (b) all present and future products and proceeds of the Collateral.

The term "Collateral" means: All the Maker's Accounts, as defined by N.C.G.S. § 25-9-102(a)(2), which accrue after the date hereof.

The Holder may at any time and from time to time, file financing statements, continuation statements and amendments thereto that relate to the security interest granted hereunder and that contain any information required by Part 5 of Article 9 of the North Carolina Uniform Commercial Code (the "UCC").  The Holder shall have all the rights of a secured party under Article 9 of the UCC.

In addition to the rights and remedies provided by the UCC:

    a)    Holder shall have an allowed administrative expense claim in the Bankruptcy Case in the amount of any unpaid amount under this Promissory Note and Security Agreement (the "Super-Priority Claim") with priority pursuant to 11 U.S.C. § 364(c)(1) and otherwise over all administrative expense claims and unsecured claims against the Maker, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code Sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), and 1114; provided, however, that the Super-Priority Claim shall not have priority over, and shall be subordinate to, the Carve Out, as that term is defined in the order in the Bankruptcy Case approving this Promissory Note and Security Agreement (Doc. No. _____) (the "Approval Order").

    b)    The security interests and liens created and granted to Holder hereunder to secure the amounts due under this Promissory Note and Security Agreement are: (a) pursuant to 11 U.S.C. § 364(c)(2), first, prior, perfected, and superior to any security, mortgage, collateral interest, lien, or claim to the Collateral; and (b) subject to the Carve-Out.

This Promissory Note and Security Agreement and the rights and obligations of the parties hereunder shall be construed and interpreted in accordance with the laws of the State of North Carolina and the United States Bankruptcy Code. Any action during the pendency of the Bankruptcy Case to enforce, challenge, or construe the terms or making of this Promissory Note and Security Agreement or to recover for its breach shall be brought in, and heard exclusively by, the United State Bankruptcy Court for the Eastern District of North Carolina.

All sums due hereunder shall be paid to the Holder at, _____, _____, in lawful currency of the United States of America in immediately available funds.

In witness whereof the undersigned has caused this Promissory Note and Security Agreement to be duly executed as an instrument under seal, effective as of the date first above written regardless of the actual date of execution and delivery.

*This Promissory Note and Security Agreement may not be executed and delivered except in accordance with an order of the United States Bankruptcy Court for the Eastern District of North Carolina in the Bankruptcy Case.*

CAH Acquisition Company 12, LLC d/b/a Fairfax Community Hospital

By: _____
Name: Thomas W. Waldrep, Jr., Trustee