## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | **Case No. 19-01697-5-JNC** |
| **CAH ACQUISITION COMPANY 12, LLC,** ) | |
| **d/b/a FAIRFAX COMMUNITY HOSPITAL,** ) | **Chapter 11** |
| ) | |
| **Debtor.** ) | |
| ) | |
| ) | |

## TRUSTEE'S MOTION FOR: (I) INTERIM ORDER (A) AUTHORIZING THE USE OF CASH COLLATERAL AND (B) SCHEDULING FINAL HEARING PURSUANT TO RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; AND (II) A FINAL ORDER AUTHORIZING THE USE OF CASH COLLATERAL

**NOW COMES** Thomas W. Waldrep, Jr., trustee (the "Trustee") for CAH Acquisition

Company 12, LLC d/b/a Fairfax Community Hospital (the "Debtor"), by and through  his

undersigned counsel, and pursuant to Sections 105(a) and 363(c)(2) of Title 11 of the United States

Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rules 4001(b) and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby moves the Court for (i) the entry

of an interim Order, substantially in the form attached hereto as Exhibit A (the "Interim Cash

Collateral Order"), (a) authorizing the use of Cash Collateral (as defined herein) on an interim basis;

(b) granting adequate protection as described herein; and (c) scheduling a hearing on the final

approval of the use of Cash Collateral and approving the form and manner of notice, and (ii) a final

order (the "Final Cash Collateral Order" and together with the Interim Cash Collateral Order, the

"Cash Collateral Orders") approving the use of Cash Collateral (as defined herein) on a final basis.

In support of the Motion, the Trustee respectfully states as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The relief sought in this Motion is based upon Sections 105 and 363 of the Bankruptcy Code and Rules 4001(c) and 9014 of the Bankruptcy Rules.

## FACTUAL BACKGROUND

### *Procedural Background*

4.      On April 1, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

5.      On April 12, 2019, the Court entered an Order approving the appointment of the Trustee [Dkt. No. 52].  The Trustee is the duly appointed, qualified, and acting trustee of the Debtor's estate.

6.      The Debtor operates Fairfax Community Hospital ("Fairfax") a for-profit, Critical Access Hospital in Fairfax, Oklahoma.  Fairfax provides acute care, swing bed, emergency medicine, radiology, physical rehabilitation, laboratory, skilled nursing, and related outpatient ancillary services to residents in Fairfax and in surrounding communities.

7.      Upon information and belief, the Debtor is currently owned by HMC/CAH Consolidated, Inc. ("HMC") (20% interest) and Health Acquisition Company, LLC ("HAC," and together with HMC, the "Owners") (80% interest).  Upon information and belief, the Owners are in the business of acquiring and operating a system of acute care hospitals located in rural communities that are certified by The Centers for Medicare and Medicaid Services ("CMS") as Critical Access Hospitals.  Upon information and belief, the Owners own and/or operate rural

hospitals in several states, including Kansas, North Carolina, Missouri, Tennessee, and Oklahoma.

**_Pre-Petition Management of Fairfax_**

8.     Upon information and belief, through and until January 7, 2019, EmpowerHMS LLC ("EmpowerHMS") managed Fairfax under one or more contracts with the Debtor. EmpowerHMS is a Delaware limited liability company headquartered in Kansas City, Kansas. Upon information and belief, EmpowerHMS formerly provided the financial support, legal support, centralized business office, and revenue cycle and IT services necessary to Fairfax's operations.

9.     Upon information and belief, as of January 7, 2019, EmpowerHMS no longer operated or managed Fairfax, the management of which was transferred by EmpowerHMS to iHealthcare Management II Company, a Florida corporation ("Manager") and iHealthcare Software Services, Inc., a Florida corporation ("Consultant")[1] pursuant to (i) a *Management and Administrative Services Agreement* (the "Terminating Management Agreement") dated as of January 7, 2019, by and between the Debtor and Manager; (ii) an *EHR and RCM Services Agreement* dated as of January 7, 2019 by and between the Debtor and Consultant; and (iii) an *IT Help Desk Support & Daily Backup Services Agreement* also dated as of January 7, 2019 by and between the Debtor and Consultant (together with the *EHR and RCM Services Agreement*, collectively, the "Terminating Services Agreements").

10.     Upon information and belief, after January 7, 2019, iHealthcare attempted to begin to manage Fairfax, but such efforts were delayed by several transition and financial issues with Empower.

---

[1] Manager and Consultant shall be referred to herein collectively as "iHealthcare."

***Post-Petition Events***

11.     Since his appointment on April 12, 2019, the Trustee has administered the estate of the Debtor and seven affiliated debtors in bankruptcy cases currently pending before this Court (collectively, the "Affiliated Debtors"). See *Order Directing Joint Administration of Chapter 11 Cases*, Case No. 19-00730, Dkt. No. 75.

12.     The Trustee has concluded that in order to preserve the property of the Debtor's estate, to prevent further loss to the estate, and to maximize the value of the assets of Fairfax for the benefits of creditors of the Debtor, the Trustee must pay certain ordinary course operating expenses.

***Post-Petition Interim Management of Fairfax and Need for Cash Collateral***

13.     In order to operate Fairfax in the most cost-efficient manner, the Trustee has retained Cohesive Healthcare Management & Consulting, LLC to provide a centralized business office, revenue cycle management, billing, patient record, patient intake, and IT services necessary to the operations of Fairfax.

14.     As of the date hereof, the Trustee has custody or control over approximately $155,710.21 in this case, which may be "cash collateral" as that term is defined in 11 U.S.C. § 363(a). This Motion seeks authority to use the funds on hand, as well as any cash which may be generated post-petition (collectively, the "Cash Collateral").

***Necessity of the Debtor's Use of Cash Collateral***

15.     The Debtor does not have available sources of working capital to carry on the operation of its business without the use of Cash Collateral. The Debtor has an immediate need to use Cash Collateral to pay the ongoing costs of maintaining the hospital, paying its staff, and insuring, preserving, repairing, and protecting all its tangible assets, and ensuring payment of all

post-petition vendors that extend post-petition credit to the Debtor. Without the use of Cash Collateral, the Trustee will not be able to maintain the assets of the Estate and continue efforts to operate the facility.

16.     Without the use of Cash Collateral, the values of the Debtor's assets, including the going-concern value of its business, will significantly decline, resulting in financial loss to all parties in interest and a loss to the community of its local health care provider. The Debtor requests the Court to authorize the use of Cash Collateral as set forth herein.

### *Entities Which May Have an Interest in the Cash Collateral*

17.     Based on a review of the Delaware Uniform Commercial Code ("UCC") filings,[2] the following entities (collectively, the "Purported Cash Collateral Creditors") may assert an interest in, or lien against, all or a portion of the Cash Collateral:

     a.     Paul Nusbaum and Steve White  as successors-in-interest to HMC/CAH Note Acquisition, LLC; and

     b.     GEL Funding, LLC.[3]

18.     The Trustee has not yet obtained copies of any loan or lease documents, other than those from Delaware's UCC filings, relating to the foregoing entities. The Trustee has little information regarding the amount and validity of any debt owed by the Debtor to any of the Purported Cash Collateral Creditors or the extent, validity, or priority of any lien or security interest asserted by any of the Purported Cash Collateral Creditors.

---

[2] The Debtor is a Delaware limited liability company.
[3] Upon information and belief, GEL Funding changed its name to Bridge Funding Capital, LLC on or about March 19, 2019.

**RELIEF REQUESTED**

19.     By this Motion, the Trustee seeks (i) entry of order (a) authorizing the use of Cash Collateral, on an interim basis, (b) granting adequate protection as provided herein, and (c) scheduling a hearing on the final approval of the use of Cash Collateral and approving the form and matter of notice, and (ii) providing final approval of the use of Cash Collateral.

20.     Section 363(c)(2) of the Bankruptcy Code, which governs the ability of a debtor-in-possession to use cash collateral, provides, in pertinent part:

The trustee may not use, sell or lease cash collateral . . . unless –

(A)     each entity that has an interest in such cash collateral consents; or

(B)     the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

21.     The Trustee requests that this Court grant the authority to use Cash Collateral in the ordinary course of the Debtor's business pursuant to Section 363 of the Bankruptcy Code.   The Debtor requires Cash Collateral to fund its ongoing ordinary course expenses including, but not limited to, utilities, insurance and payroll of staff.   Without the use of Cash Collateral, the Debtor cannot meet such needs or make any other ordinary course business expenditures, such as payroll, necessary to preserve and maintain the viability of its ongoing operations and patient care requirements.

22.     Section 363(e) of the Bankruptcy Code provides that on request of an entity that has an interest in property used or proposed to be used by the Trustee, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest.   Examples of adequate protection include, but are not limited to, those listed in 11 U.S.C. § 361, such as (a) lump sum or periodic cash payments to the entity holding the interest in property to be used to the extent

that such use will result in a decrease in value of such entity's interest in the property, (b) provisions for an additional or replacement lien to the extent that the use of the property will cause a decrease in the value of such entity's interest in the property, and (c) such other relief as will result in the realization by such entity of the "indubitable equivalent" of such entity's interest in the property.

23.     The Trustee proposes that he use the Cash Collateral upon the following terms and conditions and that such terms and conditions will provide adequate protection to any person or entity, including the Purported Cash Collateral Creditors, claiming an interest in the Cash Collateral:

a.     The Trustee will use the Cash Collateral only in the ordinary course of its business, subject to an approved budget, and subject to further order of the Court;

b.     Any person or entity claiming an interest in the Cash Collateral, including the Purported Cash Collateral Creditors, will receive a continuing post-petition lien and security interest (the "Post-Petition Liens") in all property and categories of property of the Debtor in which, and of the same priority as, said creditor held a similar, unavoidable lien as of the Petition Date, and the proceeds thereof, whether acquired pre-petition or post-petition (the "Post-Petition Collateral"), equivalent to a lien granted under Sections 364(c)(2) and (3) of the Bankruptcy Code, but only to the extent of Cash Collateral used. The validity, enforceability, and perfection of the aforesaid post-petition liens on the Post-Petition Collateral shall not depend upon filing, recordation, or any other act required under applicable state or federal law, rule, or regulation; and

c.     Such Post-Petition Liens shall be senior, first-priority, validly perfected liens, subordinate only to (i) payment of fees to pursuant to 28 U.S.C. § 1930 and (ii) the

fees and expenses of the professionals retained by the Debtor and the Committee that are allowed by the Bankruptcy Court prior to any termination of the use of Cash Collateral and after termination of the use of Cash Collateral, if so terminated, any unpaid fees and expenses of such professionals that are allowed by the Bankruptcy Code (collectively, the "Carveout").

24.    Pending a final hearing, the Debtor requires use of Cash Collateral for, among other things, payment of ordinary course utilities and funding of payroll obligations, and other working capital needs. The Debtor's request represents the amount of cash necessary to operate during the period prior to the final hearing on this Motion.

25.    Attached hereto as Exhibit 1 and incorporated herein by reference is an interim cash-flow forecast and revenue (the "Budget") covering August 12, 2019 through November 4, 2019 and setting forth the essential payments necessary to sustain the Debtor's operations.  The Trustee seeks interim authority to use Cash Collateral immediately in the amounts set forth in the Budget.  This interim relief is required to prevent immediate and irreparable harm to the Debtor's operations.

26.    For the reasons stated above, the Trustee respectfully requests that the Court grant the relief requested herein.

**RESERVATION OF RIGHTS**

27.    Nothing herein shall be deemed to be a waiver by any party, including the Trustee, of such party's rights to challenge the existence, validity, and amount of any of creditor's claims, including the Purported Cash Collateral Creditor's claims, or the extent, validity, or priority of any of purported pre-petition security interests in, and liens on, any of the Debtor's property, and

the Trustee hereby reserves all his rights and remedies, whether at law, at equity, or otherwise, with respect thereto.

## NOTICE

28.     Notice of this Motion has been given via facsimile, hand delivery, electronic mail, or overnight mail to:

      a.      The Office of the United States Bankruptcy Administrator, 434 Fayetteville Street, Suite 640, Raleigh, NC 27601 (Attn: Marjorie Lynch, Esq.);

      b.      GEL Funding, LLC, c/o Officer or Managing Agent, 5308 13th Avenue, Suite 324, Brooklyn, NY 11219;

      c.      Bridge Funding Capital, LLC, c/o Officer or Managing Agent, 5308 13th Avenue, Suite 324, Brooklyn, NY 11219;

      d.      GEL Funding, LLC, c/o Steven Berkovitch and Ariel Bouskila, Berkovitch & Bouskila, PLLC, 1330 6th Avenue, Suite 600B, New York, NY 10019;

      e.      Bridge Funding Capital, LLC, c/o Steven Berkovitch and Ariel Bouskila, Berkovitch & Bouskila, PLLC, 1330 6th Avenue, Suite 600B, New York, NY 10019;

      f.      HMC/CAH Note Acquisition, LLC, c/o John Paul H. Cournoyer, 1414 Raleigh Road, Suite 435, Chapel Hill, NC 27517.

29.     Because of the exigent circumstances and the irreparable harm to the Debtor, its estate, and all parties-in-interest that will ensue if the relief requested herein is not granted, the Trustee submits that no other notice need be given.

31.     No prior motion for the relief requested herein has been made to this or any other Court.

9

**WHEREFORE**, the Trustee respectfully requests that the Court:

A.       Enter an Interim Order in the form attached hereto as <u>Exhibit A</u> after notice and hearing authorizing the Debtor to use cash collateral in an amount to be determined at the Interim Hearing based upon the budget attached to the proposed Interim Order, and (ii) providing the Purported Cash Collateral Creditors with adequate protection as set forth herein;

B.       Schedule a further hearing be held regarding this Motion, the Interim Order, and the Debtor's request for a final order, after providing such notice as is required by Rule 4001 of the Federal Rules of Bankruptcy Procedure; and

C.       Grant such other and further relief as the Court may deem necessary and proper.

Respectfully submitted, this the 16th day of August, 2019.

> **WALDREP LLP**
>
> */s/ Thomas W. Waldrep, Jr.*
> Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
> Jennifer B. Lyday (NC Bar No. 39871)
> Francisco T. Morales (NC Bar No. 43079)
> 101 S. Stratford Road, Suite 210
> Winston-Salem, NC 27104
> Telephone: 336-717-1440
> Telefax: 336-717-1340
> Email: notice@waldrepllp.com
>
> - and -
>
> **HENDREN, REDWINE & MALONE, PLLC**
>
> Jason L. Hendren (NC State Bar No. 26869)
> Rebecca F. Redwine (NC Bar No. 37012)
> Benjamin E.F.B. Waller (NC Bar No. 27680)
> 4600 Marriott Drive, Suite 150
> Raleigh, NC 27612
> Telephone: 919-420-7867
> Telefax: 919-420-0475
> Email: jhendren@hendrenmalone.com
>           rredwine@hendrenmalone.com
>           bwaller@hendrenmalone.com
> *Co-Counsel for the Trustee*

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION**

IN RE:         )
            )    **Case No. 19-01697-5-JNC**
**CAH ACQUISITION COMPANY 12, LLC,** )
**d/b/a FAIRFAX COMMUNITY HOSPITAL,** )    **Chapter 11**
            )
    **Debtor.**     )
            )
            )
            )

**INTERIM ORDER (A) AUTHORIZING THE USE OF CASH COLLATERAL AND (B) SCHEDULING FINAL HEARING PURSUANT TO RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

This matter came before the Court, to consider the *Trustee's Motion For: (i) Interim Order (A) Authorizing the Use of Cash Collateral and (B) Scheduling Final Hearing Pursuant To Rule 4001 of the Federal Rules of Bankruptcy Procedure; and (ii) a Final Order Authorizing the Use of Cash Collateral* (the "Motion") filed by Thomas W. Waldrep, Jr., Trustee[4] for the above-captioned Debtor pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001.

After due consideration of the evidence presented, the evidence presented, the record in this case, and the comments of parties wishing to be heard, it appears to the Court that allowing the use of Cash Collateral subject to the terms and conditions set forth below is reasonable and appropriate, in the best interests of the bankruptcy estate and all creditors, and should be approved, and for good and sufficient reasons appearing the Court makes the following findings, conclusions and orders on an interim basis:

---

[4] Terms not defined herein shall have the same meaning ascribed to them in the Motion.

1.      The Court has jurisdiction over the subject matter hereof pursuant to 28 U.S.C. §§ 151, 157 and 1334, and this is a core proceeding within 28 U.S.C. §157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      On April 1, 2019, the Petition Date, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

3.      On March 12, 2019, the Court entered an Order approving the appointment of the Trustee.  The Trustee is the duly appointed, qualified, and acting trustee of the Debtor's estate.

4.      Since his appointment on April 12, 2019, the Trustee has administered the estate of the Debtor, as well as the estates of seven Affiliated Debtors that are all currently pending before this Court. See *Order Directing Joint Administration of Chapter 11 Cases*, Case No. 19-00730, Dkt. No. 75.

5.      No official committee of unsecured creditors has been appointed.

6.      The Debtor operates Fairfax a for-profit, Critical Access Hospital in Fairfax, Oklahoma. Prior to the Petition Date, Fairfax provided acute care, swing bed, emergency medicine, radiology, physical rehabilitation, laboratory, skilled nursing, and related outpatient ancillary services to residents in Fairfax and in surrounding communities.

8.      It appears that the Debtor is currently owned by HMC/CAH Consolidated, Inc. ("HMC") (20% interest) and Health Acquisition Company, LLC ("HAC," and together with HMC, the "Owners") (80% interest).  It appears that the Owners are in the business of acquiring and operating a system of acute care hospitals located in rural communities that are certified by The Centers for Medicare and Medicaid Services ("CMS") as Critical Access Hospitals.  Upon information and belief, the Owners own and/or operate rural hospitals in several states, including Kansas, North Carolina, Missouri, Tennessee, and Oklahoma.

9.      Through and until January 7, 2019, Empower managed Fairfax under one or more contracts with the Debtor.  Empower is a Delaware limited liability company headquartered in Kansas City, Kansas. Empower formerly provided the financial support, legal support, centralized business office, and revenue cycle and IT services necessary to the operations of Fairfax.

10.     It appears that as of January 7, 2019, EmpowerHMS no longer operated or managed Fairfax, the management of which was transferred by EmpowerHMS to iHealthcare by the Terminating Services Agreement.

7.      After January 7, 2019, iHealthcare attempted to begin to manage Fairfax, but such efforts were delayed by several transition and financial issues with Empower.

8.      As of the date of the Motion, the Trustee had custody or control over approximately $155,710.21 in this case, which may be "cash collateral" as that term is defined in 11 U.S.C. § 363(a).

9.      The Debtor has concluded that in order to preserve the property of the Debtor's estate, to prevent further loss to the estate, and to maximize the value of the assets of Fairfax for the benefit of creditors of the Debtor, the Trustee must pay certain ordinary course operating expenses, including paying wages to a reduced staff to maintain the facility.

10.     Without the use of Cash Collateral, the values of the Debtor's assets, including the going-concern value of its business, will significantly decline, resulting in financial loss to all parties in interest and a loss to the community of its health care choice.

11.     The following entities, the Purported Cash Collateral Creditors, may assert an interest in, or lien against, all or a portion of the Cash Collateral:

a.      Paul Nusbaum and Steve White as successors-in-interest to HMC/CAH Note Acquisition, LLC (collectively "Nusbaum/White"); and

b.      GEL Funding, LLC.

12.      The terms, conditions, and limitations of this Order are reasonably tailored to protect the interests of all creditors in this bankruptcy case.

**NOW, THEREFORE**, based upon the foregoing, the Court concludes that allowing the use of Cash Collateral is necessary and that an order granting interim relief, followed by a further or final hearing upon due notice, would not prejudice the rights of the Purported Cash Collateral Creditors, or any other party in interest, and for good and sufficient reasons appearing it is hereby **ORDERED** as follows:

A.      Subject to the terms and conditions contained in this Order, the Trustee may use cash collateral in accordance with Section 363 of the Bankruptcy Code on an interim basis and for the period through and including November 8, 2019 (the "Expiration Date"), in the amounts and for the purposes set forth in the budget for the months of August to November, not to exceed 115% on a line-item cumulative basis, pending further orders of the Court after notice and hearing. A copy of the budget is attached hereto as Exhibit 1.

B.      As adequate protection for the use of Cash Collateral:

a.      The Trustee will use the Cash Collateral only in the ordinary course of the Debtor's business, subject to an agreed upon budget, and subject to further order of the Court;

b.      Any person or entity claiming an interest in the Cash Collateral, including the Purported Cash Collateral Creditors, will receive a continuing post-petition lien and security interest (the "Post-Petition Liens") in all property and categories of property of the Debtor in which, and of the same priority as, said creditor held a similar, unavoidable lien as of the Petition Date, and the proceeds thereof, whether acquired pre-petition or post-

petition (the "Post-Petition Collateral"), equivalent to a lien granted under Sections 364(c)(2) and (3) of the Bankruptcy Code, but only to the extent of Cash Collateral used. The validity, enforceability, and perfection of the aforesaid post-petition liens on the Post-Petition Collateral shall not depend upon filing, recordation, or any other act required under applicable state or federal law, rule, or regulation; and

c.      Such Post-Petition Liens shall be senior, first-priority, validly perfected liens, subordinate only to (i) payment of fees to pursuant to 28 U.S.C. § 1930 and (ii) the fees and expenses of the professionals retained by the Debtor and the Committee that are allowed by the Bankruptcy Court prior to any termination of the use of Cash Collateral and after termination of the use of Cash Collateral, if so terminated, any unpaid fees and expenses of such professionals that are allowed by the Bankruptcy Court (collectively, the "Carveout"). Provided however, the Carveout may not be used in connection with challenging the secured claims asserted by Nusbaum/White, except that up to $7,500 may be expended in connection with reviewing the claims, security interests and liens asserted by Nusbaum/White.

d.      If and to the extent the adequate protection of the interests of the Purported Cash Collateral Creditors granted pursuant to this Order or further cash collateral orders of this Court proves insufficient, then the Purported Cash Collateral Creditors shall have the following:

i.      an allowed claim under 11 U.S.C. § 507(b) in the amount of any such insufficiency (i.e., the post-petition diminution in Cash Collateral), with priority over (i) all costs and expenses of administration in this case that are incurred under any provision of the Bankruptcy Code, with the sole exception of

the Carveout, and (ii) the claims of any other party in interest under 11 U.S.C. § 507(b); and

      ii.      a junior lien on all encumbered assets of the Debtor's bankruptcy estate, and a first-priority lien on all unencumbered assets of the Debtor's bankruptcy estate (with the sole exception of causes of action under Chapter 5 of the Bankruptcy Code), equivalent to a lien granted under Sections 364(c)(2) and (3) of the Bankruptcy Code, in the amount of any such insufficiency (i.e., the post-petition diminution in Cash Collateral). The validity, enforceability, and perfection of the aforesaid post-petition liens shall not depend upon filing, recordation, or any other act required under applicable state or federal law, rule, or regulation

      e.      The Trustee shall provide Nusbaum/White and the Bankruptcy Administrator, and any other party in interest that requests a copy by written notice to counsel for the Trustee, with a "budget to actual" report for each month, within fifteen (15) business days after the end of each month, which sets forth on a cash basis all income and expenditures as compared to the budget.

      C.      The Trustee, without further notice and hearing, may not use cash collateral for any purpose other than (i) operations in the ordinary course of business, (ii) adequate protection payments to secured creditors, (iii) monthly payments on executory contracts or leases, or (iv) payment of allowed administrative fees, costs, or expenses.

      D.      Notwithstanding any suspension or termination of the right to use Cash Collateral on the Expiration Date, the Trustee shall be permitted to carve out from Cash Collateral or any replacement collateral and use an aggregate amount necessary to pay all Permitted Trailing Expenses. As used herein, the term "Permitted Trailing Expenses" shall mean, on the Expiration

Date, the following expenses to the extent incurred post-petition and prior to such Expiration Date but in the aggregate amount not to exceed one hundred fifteen percent (115%) of the aggregate expenditures set forth in the Budget through such Expiration Date: (i) the costs of operating and preserving the estate, including professionals' fees and expenses, and (ii) quarterly fees pursuant to 28 U.S.C. § 1930(a)(7).

E.     This Order shall remain in full force and effect until the earlier of the (a) entry of an Order by the Court modifying the terms of this Order, or (b) entry of an Order by the Court terminating the right to use Cash Collateral.

F.     Nothing contained herein shall be deemed as a waiver by any party in interest, including the Purported Cash Collateral Creditors, from seeking further or additional adequate protection of its collateral, asserting objections to the use of Cash Collateral beyond the Expiration Date, or pursuing any other rights or remedies available to it or any of them under law or equity.

G.     The Trustee, the Debtor, and the Committee (if formed) shall have the right to challenge the existence, validity, and amount of any of Nusbaum/White's claims, or to challenge the extent, validity, or priority of any purported pre-petition security interests or liens, asserted by Nusbaum/White, whether such rights and remedies are based in law, equity, or otherwise, for a period of one hundred and twenty (120) days following the entry of the 1st Interim Cash Collateral Order (the "Challenge Period").  Unless the Trustee, the Debtor, or the Committee has initiated a contested matter or adversary proceeding challenging the claim of Nusbaum/White within the Challenge Period, then (i) the claims, liens, and security interests of Nusbaum/White shall be deemed to be allowed for all purposes in this case and shall not be subject to challenge by any party in interest as to extent, validity, priority or otherwise, and (ii) the bankruptcy estate shall be deemed to have waived any claim or cause of action related to the indebtedness at issue in

Nusbaum/White's proof of claim.  The provisions of this paragraph are referred to herein as the "Challenge Provisions."  Provided however, and notwithstanding the foregoing, the Challenge Provisions shall not be binding upon a Chapter 7 trustee in the event this case is subsequently converted to Chapter 7.

H.      Except as set forth in the Challenge Provisions, nothing herein shall prohibit any party, including the Trustee, from challenging the existence, validity, and amount of any of creditor's claims, including the Purported Cash Collateral Creditor's claims, or the extent, validity, or priority of any of purported pre-petition security interests in, and liens on, any of the Debtor's property, and the Trustee's rights and remedies, whether at law, at equity, or otherwise, with respect thereto are hereby reserved.

I.      If any or all of the provisions of this Order are hereafter modified, vacated, or stayed by any subsequent order of this Court or any other court, such stay, modification, or vacation shall not affect the validity or enforceability of any lien or priority authorized or created hereby prior to the effective date of such modification, stay, vacation, or final order to the extent that said lien or priority is valid, perfected, enforceable and otherwise non-avoidable as of the Petition Date.  The validity and enforceability of all liens and priorities authorized or created in this Order shall survive the conversion of this case to a proceeding under Chapter 7 of the Bankruptcy Code or the dismissal of this proceeding.

J.      The terms of this Order shall be binding upon any Committee (if formed), and upon any trustee subsequently appointed, including but not limited to a Chapter 7 trustee upon conversion of this case to a case under Chapter 7 of the Bankruptcy Code; provided however, the findings, conclusions, or orders set forth herein are made on an interim basis, shall not constitute

a final decision on any legal or factual issue, and are without prejudice to the right of any party to raise, contest, or seek the same or a different outcome at any subsequent hearing.

K.    Nothing in this Order limits the right or ability of the Trustee, the Debtor, any Committee of Unsecured Creditors subsequently created, and any trustee subsequently appointed in this Chapter 11 proceeding or in any subsequent Chapter 7 proceeding, to challenge, avoid, object to, set aside, or subordinate any claims, liens, security interests, or rights of setoff against the Debtor's property, or the rents, profits and income generated therefrom.

L.    A further hearing (which may be a final hearing) on this Motion will be held at 10:00a.m. on November ___, 2019 at 150 Reade Circle, Greenville, North Carolina, at which time the Court will further consider the Motion.

M.    Counsel for the Trustee shall serve a copy of this Order upon the Bankruptcy Administrator, the Purported Cash Collateral Creditors and shall file a certificate of such service with the Clerk.

**EXHIBIT 1**

**Fairfax Community Hospital – Cash #12**
**13 Week Cash Flow Forecast (US$)**
**12-Aug-19**

| | Week of | Week of | Week of | Week of | Week of | Week of | Week of | Week of | Week of | Week of | Week of | Week of | Week of | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash – Beginning of Period** | 206,642 | | 81,776 | 86,020 | | | 115,165 | 127,654 | 23,471 | 21,175 | 295,107 | 308,096 | | 206,642 |
| **Cash Receipts** | | | | | | | | | | | | | | |
| Medicare Inpatient Acute | | 39,327 | 13,109 | 13,109 | 13,109 | 20,355 | 20,355 | 20,355 | 20,355 | 20,355 | 20,355 | 20,355 | 20,355 | 221,137 |
| Medicare Swing Bed | | 100,000 | | | | 205,000 | | | | 546,686 | | | | 851,687 |
| Medicare Outpatient | | 30,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 130,000 |
| Medicare Rural Health Clinic | | 25,079 | 8,360 | 8,360 | 8,360 | 8,360 | 8,360 | 8,360 | 8,360 | 8,360 | 8,360 | 8,360 | 8,360 | 108,677 |
| All Other Payers | | 30,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 130,000 |
| **Total Cash Receipts** | | 224,407 | 41,469 | 41,469 | 52,010 | 253,715 | 48,714 | 48,714 | 595,401 | 48,714 | 48,714 | 48,714 | 48,714 | 1,441,500 |
| **Operating Expenses (cash basis)** | | | | | | | | | | | | | | |
| Payroll Semi-Monthly Gross | 96,000 | 96,000 | 96,000 | 96,000 | | 96,000 | | 96,000 | | 96,000 | | 96,000 | | 672,000 |
| Payroll Taxes | 12,000 | 12,000 | 12,000 | 12,000 | | 12,000 | | 12,000 | | 12,000 | | 12,000 | | 84,000 |
| Insurance Health - Employees | 20,000 | | | 20,000 | | | | 20,000 | | | | | | 60,000 |
| Insurance Health - Work Comp | | | | | | | | | | | | | | 22,852 |
| Insurance General & Building & Med Malpractice | | | | | | | | | | | | | | 42,762 |
| Utilities Gas & Electric | 5,713 | | 5,713 | 5,713 | | 5,713 | | 5,713 | | 5,713 | | 5,713 | 5,713 | 42,762 |
| Telephone, Internet, Cable | 500 | | 500 | | 500 | | | 500 | | 500 | | | | 19,100 |
| Purchase Service | 4,400 | 4,400 | 4,400 | 4,400 | 600 | 600 | 600 | 600 | 4,400 | 4,400 | 4,400 | 4,400 | 4,400 | 9,400 |
| Repairs and Maintenance | 1,900 | 1,900 | 1,900 | 1,850 | 1,850 | 1,850 | 1,850 | 2,150 | 2,150 | 2,350 | 2,350 | 2,350 | 1,900 | 28,450 |
| Supplies | 2,350 | 2,150 | 2,150 | 2,150 | 2,350 | 750 | 750 | 975 | 975 | 750 | 750 | 600 | 1,850 | 11,175 |
| Office Supplies | 975 | 750 | 750 | 1,000 | 975 | 14,175 | 14,175 | 1,000 | 14,175 | 14,175 | 14,175 | 14,175 | 750 | 184,275 |
| Postage & Delivery | 14,175 | 14,175 | 14,175 | 14,175 | 14,175 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 14,175 | 3,900 |
| HERC CT Lease | 300 | 300 | 300 | 300 | 300 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 300 | 3,250 |
| Misc Equipment Leases/Maintenance | 250 | 250 | 250 | 250 | 250 | 5,800 | 5,800 | | 5,800 | | | | 250 | 17,400 |
| Cohesive Monthly Fee - Paid by 5th | 1,900 | | 1,900 | 1,900 | | 1,900 | | 1,900 | | | | 1,900 | | 7,600 |
| Contract Labor | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 193,419 | 10,000 | 10,000 | 10,000 | 10,000 | 313,419 |
| Centralized Billing Office | | | | | | | | | | | | | | |
| Electronic Health Record | | | | | | | | | | | | | | |
| Lab Information System | | | | | | | | | | | | | | |
| Website, Internet, Encryption | | | | | | | | | | | | | | 5,000 |
| Cost Report Preparation | 5,000 | | | | | | | | | | | | | 1,906 |
| Admin Expenses | | 635 | 635 | 635 | | | | | 635 | 635 | | | | 36,000 |
| Contingency | 4,000 | 3,500 | 3,500 | 3,000 | 3,000 | 2,500 | 2,500 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | |
| Other | | | | | | | | | | | | | | |
| **Total Operating Expenses** | 201,501 | 139,550 | 152,738 | 152,738 | 52,010 | 138,550 | 36,225 | 151,738 | 321,469 | 51,010 | 151,738 | 35,725 | 151,738 | 1,522,489 |
| **Net Operating Cash Flow** | (201,501) | 84,857 | (111,269) | (111,269) | (10,541) | 115,165 | 12,489 | (103,024) | 273,931 | (2,296) | (103,024) | 12,989 | (103,024) | (80,989) |
| **Non-Operating Expenses (cash basis)** | | | | | | | | | | | | | | |
| Debt Service | | | | | | | | | | | | | | |
| Pre-Petition Missed Payroll | 117,600 | | | | | | | | | | | | | 117,600 |
| Reimbursement of Post-Petition Advances | | | | | | | | | | | | | | |
| Capital Expenditures | | | | | | | | | | | | | | |
| Professional Fees | | | | | | | | | | | | | | |
| Ch11 Trustee Fees | | | | | | | | | | | | | | |
| Other | | | | | | | | | | | | | | 6,559 |
| Bankruptcy Administrator | | 3,081 | | 1,159 | 1,159 | | | | | | | | | |
| IT Costs | | 3,081 | | 1,159 | 1,159 | | | | | | 1,159 | 1,159 | | 1,159 |
| **Total Non-Operating Expenses** | 117,600 | 3,081 | | 1,159 | | | | | | | | | | 124,159 |
| **Net Cash Flow** | (319,101) | (53,010) | (112,428) | (112,428) | (10,541) | 115,165 | 12,489 | (104,183) | 273,931 | (2,296) | (104,183) | 12,989 | (104,183) | (205,148) |
| **DIP Funding** | | | | | | | | | | | | | | |
| Beginning DIP Balance | 1,036,457 | 1,148,915 | 1,201,925 | 1,201,925 | 1,228,334 | 1,238,876 | 1,238,876 | 1,238,876 | 1,238,876 | 1,238,876 | 1,238,876 | 1,238,876 | 1,238,876 | 1,036,457 |
| Draw | 112,459 | 53,010 | | 26,409 | 10,541 | | | | | | | | | 202,459 |
| Ending DIP Balance | 1,148,915 | 1,201,925 | 1,201,925 | 1,228,334 | 1,238,876 | 1,238,876 | 1,238,876 | 1,238,876 | 1,238,876 | 1,238,876 | 1,238,876 | 1,238,876 | 1,238,876 | 1,238,876 |
| Approved DIP Funding Remaining | 851,085 | 798,075 | 798,075 | 771,666 | 761,124 | 761,124 | 761,124 | 761,124 | 761,124 | 761,124 | 761,124 | 761,124 | 761,124 | 761,124 |
| Additional DIP Funding Required | | | | | | | | | | | | | | |
| **Cash – End of Period** | | 81,776 | 86,020 | | | 115,165 | 127,654 | 23,471 | 21,175 | 295,107 | 308,096 | | 203,913 | 203,913 |

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | **Case No. 19-01697-5-JNC** |
| **CAH ACQUISITION COMPANY 12, LLC,** ) | |
| **d/b/a FAIRFAX COMMUNITY HOSPITAL,** ) | **Chapter 11** |
| ) | |
| **Debtor.** ) | |
| ) | |
| ) | |

## NOTICE OF TRUSTEE'S MOTION FOR: (I) INTERIM ORDER (A) AUTHORIZING THE USE OF CASH COLLATERAL AND (B) SCHEDULING FINAL HEARING PURSUANT TO RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; AND (II) A FINAL ORDER AUTHORIZING THE USE OF CASH COLLATERAL

NOTICE IS HEREBY GIVEN that Trustee has filed a **MOTION FOR: (I) INTERIM ORDER (A) AUTHORIZING THE USE OF CASH COLLATERAL AND (B) SCHEDULING FINAL HEARING PURSUANT TO RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; AND (II) A FINAL ORDER AUTHORIZING THE USE OF CASH COLLATERAL** ("Motion").

FURTHER NOTICE IS HEREBY GIVEN that the Motion filed by the Trustee, may be allowed provided no responses and request for a hearing is made by a party in interest in writing to the Clerk, United States Bankruptcy Court, P.O. Box 791, Raleigh, NC 27602, **within FOURTEEN (14) DAYS** from the date of this notice, and,

FURTHER NOTICE IS HEREBY GIVEN that any responses to Motion should also be mailed to the Trustee at the address given below.

FURTHER NOTICE IS HEREBY GIVEN, that if a response and request for a hearing is filed by a part in interest in writing within the time indicated, a hearing will be conducted on the Motion and Response thereto at a date, time and place to be later set by the Court and all interest parties will be notified accordingly. If no request for hearing is timely filed, the Court may rule on the Motion and Response thereto *ex parte* without further notice.

DATE OF NOTICE:  August 16, 2019

**WALDREP LLP**

*/s/ Thomas W. Waldrep, Jr.*
Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
Jennifer B. Lyday (NC Bar No. 39871)
Francisco T. Morales (NC Bar No. 43079)
James C. Lanik (NC Bar 30454)
101 S. Stratford Road, Suite 210
Winston-Salem, NC 27104

Telephone: 336-717-1440
Telefax: 336-717-1340
Email: notice@waldrepllp.com

**- and –**

**HENDREN, REDWINE & MALONE, PLLC**

Jason L. Hendren (NC State Bar No. 26869)
Rebecca F. Redwine (NC Bar No. 37012)
Benjamin E.F.B. Waller (NC Bar No. 27680)
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: 919-420-7867
Telefax: 919-420-0475
Email: jhendren@hendrenmalone.com
        rredwine@hendrenmalone.com
        bwaller@hendrenmalone.com
*Co-Counsel for the Trustee*

## CERTIFICATE OF SERVICE

I, Jason L. Hendren, 4600 Marriott Drive, Suite 150, Raleigh, NC 27612 certify;

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age;

That on the 16th day of August, 2019 I served copies of the foregoing TRUSTEE'S MOTION on the parties listed below pursuant to the Order Limiting Notice.

I certify under penalty of perjury that the foregoing is true and correct.

DATED: August 16, 2019

**WALDREP LLP**

*/s/ Thomas W. Waldrep, Jr.*
Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
Jennifer B. Lyday (NC Bar No. 39871)
Francisco T. Morales (NC Bar No. 43079)
James C. Lanik (NC Bar No 30454)
101 S. Stratford Road, Suite 210
Winston-Salem, NC 27104
Telephone: 336-717-1440
Telefax: 336-717-1340
Email: notice@waldrepllp.com

**- and –**

**HENDREN, REDWINE & MALONE, PLLC**

Jason L. Hendren (NC State Bar No. 26869)
Rebecca F. Redwine (NC Bar No. 37012)
Benjamin E.F.B. Waller (NC Bar No. 27680)
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: 919-420-7867
Telefax: 919-420-0475
Email: jhendren@hendrenmalone.com
        rredwine@hendrenmalone.com
        bwaller@hendrenmalone.com
*Co-Counsel for the Trustee*

Marjorie K. Lynch
Office of the Bankruptcy Administrator
Via CM/ECF

GEL Funding, LLC
c/o Officer or Managing Agent
5308 13th Avenue, Suite 324
Brooklyn, NY 11219

Bridge Funding Capital, LLC
c/o Officer or Managing Agent
5308 13th Avenue, Suite 324
Brooklyn, NY 11219

GEL Funding, LLC
c/o Steven Berkovitch and Ariel Bouskila
Berkovitch & Bouskila, PLLC
1330 6th Avenue, Suite 600B
New York, NY 10019

Bridge Funding Capital, LLC
c/o Steven Berkovitch and Ariel Bouskila
Berkovitch & Bouskila, PLLC
1330 6th Avenue, Suite 600B
New York, NY 10019

HMC/CAH Note Acquisition, LLC
c/o John Paul H. Cournoyer
Northen Blue, LLP
1414 Raleigh Road, Suite 435
Chapel Hill, NC 27517