UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 19-00730-5-JNC** |
| **CAH ACQUISITION COMPANY 1, LLC,** | ) | |
| **d/b/a WASHINGTON COUNTY** | ) | **Chapter 11** |
| **COMMUNITY HOSPITAL, et al,** [1] | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

**OMNIBUS BRIEF IN REPLY TO OBJECTIONS TO TRUSTEE'S MOTION FOR (I) AN ORDER (A) ESTABLISHING BIDDING PROCEDURES, (B) APPROVING FORM AND MANNER OF NOTICES, (C) SCHEDULING HEARING TO CONSIDER FINAL APPROVAL OF SALE AND TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (D) GRANTING RELATED RELIEF; AND (II) AN ORDER (A) APPROVING SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

**NOW COMES** Thomas W. Waldrep, Jr., trustee (the "<u>Trustee</u>") for the above-captioned

Debtors (each a "<u>Debtor</u>", and collectively, the "<u>Debtors</u>"), by and through undersigned counsel,

and hereby files this Brief in reply to the objections, as defined below, filed by Complete Business

Solutions Group ("<u>CBSG</u>"), Paul Nusbaum and Steve White ("<u>Nusbaum/White</u>"), Sun Finance,

Inc., Paul Nusbaum, and Steve White (collectively, "<u>Sun Finance</u>"), Cohesive Healthcare

Management & Consulting LLC ("<u>Cohesive</u>"), the North Carolina Department of Health and

Human Services ("<u>NCDHHS</u>"), First Capital Corporation ("<u>First Capital</u>"), and the United States

---

[1] The Court has entered orders directing the procedural consolidation and joint administration of the following debtors; cases: CAH Acquisition Company #1, LLC, d/b/a Washington County Hospital, Case No. 19-00730 (the "<u>CAH 1 Case</u>"); CAH Acquisition Company #2, LLC, d/b/a Oswego Community Hospital, Case No. 19-01230 (the "<u>CAH 2 Case</u>"); CAH Acquisition Company #3, LLC, d/b/a Horton Community Hospital, Case No. 19-01180 (the "<u>CAH 3 Case</u>"); CAH Acquisition Company 6, LLC, d/b/a I-70 Community Hospital, Case No. 19-01300 (the "<u>CAH 6 Case</u>"); CAH Acquisition Company 7, LLC, d/b/a Prague Community Hospital, Case No. 19-01298 (the "<u>CAH 7 Case</u>"); CAH Acquisition Company 12, LLC, d/b/a Fairfax Community Hospital, Case No. 19-01697 (the "<u>CAH 12 Case</u>"); and CAH Acquisition Company 16, LLC, d/b/a Haskell County Community Hospital, Case No. 19-01227 (the "<u>CAH 16 Case</u>").

Department of Health and Human Services ("USDHHS"). In support thereof, the Trustee respectfully states as follows:

## FACTUAL BACKGROUND

### *The Trustee's Auction of the Debtor's Assets*

1.      On November 6, 2019, the Trustee filed the *Trustee's Motion for (i) an Order (a) Establishing Bidding Procedures, (b) Approving Form and Manner of Notices, (c) Scheduling Hearing to Consider Final Approval of Sale and Treatment of Executory Contracts and Unexpired Leases, and (d) Granting Related Relief; and (ii) an Order (a) Approving Sale Free and Clear of All Liens, Claims, Interests, and Encumbrances, (b) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (c) Granting Related Relief* (the "Trustee's Motion") in each case.  The Trustee's Motion requested the entry of two orders—one approving certain bidding procedures for the auction of each of the Debtors' assets (the "Bidding Procedures Order") and a second order approving the sale of certain of each of the Debtors' assets (the "Transferred Assets" in each case) to the highest and best bidder free and clear of liens, claims, interests, and encumbrances pursuant to Section 363(f) of the Bankruptcy Code (the "Sale Order"). The Trustee's Motion was filed with a stalking horse bid from Affinity Health Partners, LLC ("Affinity") in the CAH 1 and CAH 6 Cases.  In all other cases, the Trustee's Motion was not filed with a stalking horse bid.

2.      With respect to the requested Sale Order, the Trustee filed a brief and memorandum of law in the lead case, the CAH 1 Case, in support of the Trustee's Motion addressing the Trustee's ability to sell, transfer, and assign the Debtor's provider agreements (the "Provider Agreements," and each a "Provider Agreement") with the Centers for Medicare and Medicaid Services ("CMS") free and clear of any successor liability for underpayments owed to CMS (the

"Trustee's Brief") [Dkt. No. 524 in the CAH 1 Case].  Specifically, the Trustee asserted that the Provider Agreement is a statutory entitlement, and not an executory contract, and is therefore not subject to the cure requirement for assumption pursuant to Section 365.

3.     On November 15, 2019, CBSG objections to the Trustee's Motion (the "CBSG Objection") in all cases except for the CAH 2 Case.  CBSG contends, among other things, that the Trustee has no authority to request a Sale Order approving of the sale of the Debtor's accounts and contract rights, as CBSG contends it owns such assets under a certain "factoring agreement."

4.     On November 27, 2019, the Court entered the Bidding Procedures Order in all cases.

5.     On December 20, 2019, the NCDHHS filed its objection to the Trustee's Motion (the "NCDHHS Objection") with respect to only the Washington County facility [Dkt. No. 607 in the CAH 1 Case].  Specifically, the NCDHHS asserts that the Provider Agreement is an executory contract and objects to the Trustee's characterization of the Provider Agreement as a statutory entitlement and request for a Sale Order approving of the sale, transfer, and assignment of the Provider Agreement free and clear of liens.

6.     On December 24, 2019, Nusbaum/White filed their objections to the sale of the Debtor's assets (the "Nusbaum/White Objection") in all cases except the CAH 6 Case.  The Nusbaum/White Objection states that the proposed sales of all affiliated Debtors—the five sold at auction and the two affiliates for which the Trustee received stalking horse bids—may not produce sufficient immediate cash to satisfy the agreed treatment provided for in the Chapter 11 Plan, and objects to the sale on that ground, among others.

7.     On December 26, 2019, Sun Finance filed an objection to the sale of the Debtor's assets (the "Sun Finance Objection") [Dkt. No. 444 in the CAH 6 Case].  The Sun Finance

Objection restates the original liens and replacement liens held by Sun Finance and notes that the proposed sales of all affiliated Debtors—the five sold at auction and the two affiliates for which the Trustee received stalking horse bids—may not produce sufficient immediate cash to satisfy the agreed treatment provided for in the Chapter 11 Plan.

8.      On December 27, 2019, the USDHHS filed its objection to the Trustee's Motion (the "USDHHS Objection") in the CAH 1 Case, the CAH 7 Case, the CAH 12 Case, and the CAH 16 Case.  Specifically, the USDHHS asserts that each Provider Agreement is an executory contract and objects to the Trustee's characterization of the Provider Agreements as statutory entitlements and request for a Sale Order approving of the sale, transfer, and assignment of the Provider Agreement free and clear of liens.

9.      The same day, First Capital filed its limited objection and reservation of rights to the Trustee's Motion (the "First Capital Objection") [Dkt. No. 622 in the CAH 1 Case].  The First Capital Objection constitutes a reservation of rights and objection to the extent the Trustee does not establish the bases under which he is entitled to sell, transfer, and assign the Debtor's assets free and clear of claims, liens, interests, and encumbrances pursuant to Section 363(f).

10.     The hearing to approve the sale to the highest bidder, pursuant to the Bidding Procedures Order, was originally set for January 2, 2020 (the "Sale Hearing").  On December 30, 2019, the Trustee filed the *Motion to Continue Sale Hearings* seeking a continuance to January 16, 2020.  On December 31, 2019, the Court entered an order granting the requested continuance.

11.     On January 6, 2020 Cohesive filed untimely objections to the Trustee's Motion in the CAH 7 Case, the CAH 12 Case, and the CAH 16 Case asserting, among other things, its right to credit bid and to be paid in full at closing.  All the foregoing objections shall be referred to as the "Sale Objections".

## ARGUMENT

12.      The Sale Objections should each be overruled, and the Trustee should be authorized to sell the Debtor's assets free and clear pursuant to Section 363(f), for the reasons set forth below.

13.      As a preliminary matter, to the extent any of the Sale Objections relate to the sale of the Debtors' accounts, the Trustee has only proposed including accounts in the Transferred Assets in the CAH 12 Case.  The estate of each Debtor—in all other cases—is retaining each Debtor's accounts.  Therefore, to the extent any Sale Objections do not bear any relation to the Transferred Assets, they should be overruled.  However, the Trustee will address such objections on their merits as well.

### *The CBSG Objection*

14.      For the reasons set out below, the Trustee disputes that CBSG has any enforceable, non-avoidable interest in any of the Debtors' property, real or personal.  This Court should overrule the CBSG Objection and should approve the sale free and clear of CBSG's interests, if any, pursuant to 11 U.S.C. § 363(f)(4).

15.      CBSG attached to its proofs of claim two Factoring Agreements, one dated November 7, 2018 and one dated December 10, 2018.  Each agreement is with HAC and lists the applicable Debtors merely as DBAs.  HAC is a separate entity and equity owner in each Debtor, and has not, upon information and belief, done business under the name of any of the Debtors.  No Debtor appears to have guaranteed any obligation to CBSG.

16.      The Trustee asserts that no Debtor has any obligation or debt to CBSG.  The Trustee further asserts that any purported grant of any security interest or lien in any Debtors' property, real or personal, and any pre-suit confession of judgment were fraudulent transfers avoidable pursuant to 11 U.S.C. § 548.

5

17.     CBSG characterizes the Factoring Agreements as true sales of the Debtors'
receivables.  The Trustee disputes that characterization.  The agreements contain, among other
things, definite repayment terms, and CBSG has recourse against purported collateral, and recourse
in the event of a bankruptcy.  The Trustee asserts on those grounds and others that the Factoring
Agreements amount to a disguised financing arrangement, not true sales of receivables.

18.     To the extent the relevant transactions are deemed financing arrangements and not
true sales, CBSG has further failed to properly perfect a security interest in any of the Debtors'
property.  CBSG filed Forms UCC-1 only in Florida.  It should have filed such financing
statements in Delaware, the state of the Debtors' organization.  The Trustee can avoid the
purported lien in the purported collateral pursuant to, among other provisions, 11 U.S.C. § 544.

19.     With respect to CAH 12, CBSG recorded a deed of trust relating to the November
2018 agreement on January 2, 2019, almost two months after the date of that agreement and within
the 90-day preference period.  The Trustee can avoid that deed of trust and the lien on the relevant
real property pursuant to, among other provisions, 11 U.S.C. § 547.

20.     The Trustee requests the Court to overrule CBSG's objection and to approve the
proposed sales, free and clear of CBSG's purported liens, claims, and interests, with such liens,
claims, and interests, if any, attaching to the proceeds of the sale pursuant to 11 U.S.C. § 363(f)(4).
An estate asset sold pursuant to Section 363(b) can be sold free and clear if the Trustee establishes
that "such interest is in bona fide dispute."  11 U.S.C. § 363(f)(4).  As set out above, the Trustee
has several bona fide bases upon which to dispute the existence and validity of both CBSG's
purported debts and purported liens.

21.     For Section 363(f)(4) to apply, there must be an "objective basis for either a factual
or legal dispute as to the validity of the debt."  In re Collins, 180 B.R. 447, 452 (Bankr. E.D. Va.

1995) (quoting In re Octagon Roofing, 123 B.R. 583, 590 (Bankr. N.D. Ill. 1991)).  The purpose of Section 363(f)(4) is to "allow the sale of property subject to dispute so that liquidation of the estate's assets need not be delayed while such disputes are being litigated."  In re Midsouth Golf, LLC, 549 B.R. 156, 185 (Bankr. E.D.N.C. 2016) (quoting In re Daufuskie Island Properties, LLC, 431 B.R. 626, 645 (Bankr. D.S.C. 2010).  However, there is no requirement that there be ongoing litigation or other proceedings under way for Section 363(f)(4) to apply—only that a basis for a dispute exists.  See In re Bedford Square Assocs., 247 B.R. 140, 145 (Bankr. E.D. Pa. 2000).

22.     In the CAH 12 Case, the only case in which the Trustee proposes to sell the accounts receivable of a Debtor, the Trustee filed an adversary proceeding, Adversary No. 19-00139, on September 16, 2019 against CBSG seeking, *inter alia*, to avoid any liens, claims, or interests asserted as fraudulent transfers.  Thus, the Trustee has established that the interest asserted by CBSG is in bona fide dispute.  This Court should thus approve the sales of the Debtors' assets free and clear of CBSG's liens, claims, or interests, if any.

**_The Nusbaum/White Objection_**

**A.     Sale Free and Clear Pursuant to 11 U.S.C. § 363(f)(4)**

23.     Nusbaum/White assert an obligation owing to them pursuant to the Gemino Note, as that term is defined in the Nusbaum/White Objection and as set out in their proofs of claim.[2] The Trustee should be able to sell the collateral of Nusbaum/White free and clear of liens, claims, interests, and encumbrances pursuant to Section 363(f)(4) and, or alternatively, Section 363(f)(5) of the Bankruptcy Code.

24.     On January 6, 2020, the Trustee received a letter from counsel for CBSG (the "CBSG Letter").  A copy of the CBSG Letter is attached hereto as Exhibit 1 and is incorporated

---

[2] CAH 1 and CAH 6 are not borrowers under the Gemino Note, though the other five Debtors are borrowers.  The Gemino Note also includes several non-Debtor obligors.

herein by reference.  CBSG asserts, among other things, that the accounts serving as collateral to the Gemino note, and the Gemino Note itself, are, in fact, CBSG's collateral. CBSG claims that HAC owned the Gemino note as of November 7, 2018 and December 10, 2018, the dates of the Factoring Agreements.  Pursuant to the proofs of claim filed by Nusbaum/White, HAC acquired the Gemino Note on July 17, 2017.  HAC transferred the Gemino Note to Nusbaum/White on March 20, 2019, several months after both CBSG Factoring Agreements.  A dispute has thus arisen between CBSG and Nusbaum/White regarding who will have the ability to enforce the Gemino Note and to receive any of the proceeds from the related collateral.  A dispute between non-debtors satisfies the dispute requirement of Section 363(f)(4).  Courts have applied that section to matters involving third-party non-debtor disputes regarding the ownership of interests in estate property to be sold.  The United States Court of Appeals for the Ninth Circuit noted that "if the outcome of the dispute over the interest will affect the value of the estate," the statute should be read to include third-party disputes.  In re Gerwer, 898 F.2d 730, 733 (9th Cir.1990); see also In re Gulf States Steel, Inc. of Alabama, 285 B.R. 497, 507 (Bankr. N.D. Ala. 2002).[3]

25.     "While courts require evidence that shows that there is an 'objective basis' for the dispute, the court is not required to determine the underlying dispute or determine the probable outcome, rather only that a dispute does in fact exist." Gulf States Steel, 285 B.R. at 507.  Here, the dispute between CBSG and Nusbaum/White falls within the auspices of Section 363(f)(4).  The Trustee, the estate, its creditors, and purchasers of estate assets cannot stand by and wait for the dispute between CBSG and Nusbaum/White to play out.  The Trustee must consummate the sale

---

[3] Bankruptcy courts should consider the application of the Section 363(f)(4) "bona fide dispute" to ownership disputes between non-debtor third parties, as the bankruptcy court has an undeniable interest in protecting the rights of third parties.  See State of Mo. v. U.S. Bankruptcy Court for E.D. of Ark., 647 F.2d 768, 778 (8th Cir. 1981); see also In re Wintz Companies, 230 B.R. 840, 844 (B.A.P. 8th Cir. 1999).

of the Debtors' assets in short order.  Delay will not increase their value and, in fact, will likely decrease it.

26.     The value of the Debtor's estate is thus affected directly by the dispute between CBSG and Nusbaum/White.  The Trustee urges the Court to allow the sales free and clear of liens, claims, and interests, if any, of Nusbaum/White (and CBSG as described above), with any such liens, claims, and interests attaching to the proceeds of the sales.[4]

**B.     Sale Free and Clear Pursuant to Section 363(f)(5)**

27.     Section 363(f)(5) provides that a trustee can sell property of the estate free and clear of an interest in property if the holder of that interest "could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."   As the Bankruptcy Court for the Middle District of North Carolina has previously acknowledged, the case law and leading bankruptcy law treatises have had some difficulty construing Section 363(f)(5).   See In re Truesdale, No. 13-10941C-7G, slip op. at 9 ("[u]nfortunately, the courts and commentators have struggled with the limitations and scope of authority conferred by this Code provision"); see also In re Canonigo, 276 B.R. 257, 264 (Bankr. N.D. Cal. 2002) (quoting David G. Epstein et al., Bankruptcy §§ 4-7 (the "Epstein Treatise"), at 403 (West Publishing Co. 1992), for his observation that Section 363(f)(5) is a "bit of an enigma").

---

[4] Notwithstanding the assertion by Nusbaum/White pursuant to those certain interim cash-collateral orders that no party in interest can contest the validity of the Gemino Note, the Trustee reserves all his rights to do so.  For example, pursuant to the Pennsylvania Commercial Code, 13 Penn. C.S. §§ 3308 and 3309, which governs the Gemino Note, a party seeking to enforce an instrument must possess the original instrument and, in the case of a lost instrument, establish the basis for the loss of the instrument.  Attachment 5 to the Proof of Claim of Nusbaum/White is titled Second Amended and Restated Revolving Note by and between Gemino Healthcare Finance, LLC and the various affiliated Debtors, but that exhibit is clearly stamped on its face with "COPY."  The proof of claim is silent as to whether Nusbaum/White hold the original note.  If the original note cannot be located, for example, the enforcement of the Gemino note could be disputed under the Pennsylvania Commercial Code and the assets underlying the claim of Nusbaum/White can be sold free and clear pursuant to Section 363(f)(4) of the Bankruptcy Code.

28.     Parsing out the language of Section 363(f)(5) reveals that the statute contains three main elements: (1) a legal or equitable proceeding exists or could be brought (2) to compel a money satisfaction (3) of an entity's interest. Courts are divided over the interpretation of each of these elements, and case law is rife with differing interpretations. The Trustee will address these elements in reverse order.

     i.       **Nusbaum/White's Asserted Liens on the Debtor's Assets are "Interests" Under 11 U.S.C. § 365(f)(5)**

29.     As the <u>Canonigo</u> court and the Esptein Treatise noted, a literal reading of Section 365(f) "would appear to authorize [sic] sale free and clear of any security interest" and therefore "would render Sections 363(f)(1) through (4) superfluous, at least as applied to liens." <u>Id.</u> <u>Canonigo</u> then offers three options to avoid this perceived absurd result: (i) "Section 363(f)(5) should be read to require the sale price to be sufficient to pay the full face amount of the claim secured by the lien unless the lien is avoidable" (the interpretation suggested by the Epstein Treatise); (ii) "Section 363(f)(5) [should be read] as requiring payment of the full face amount of the claim secured by the lien unless the lien holder could be compelled to accept less than full payment through some legal or equitable proceeding" (the interpretation espoused by 3 <u>Collier on Bankruptcy</u> § 363.06[6], at 363-48-49 (15th ed. 2001); or (iii) "[t]hat Section 363(f)(5) was not intended to apply to liens at all" but rather, "that Section 363(f)(5) should be instead interpreted as referring only to interests other than liens" because "if Section 363(f)(5) were interpreted to apply to liens as well and were read literally, it would 'swallow-up (f)(1)-(f)(4).'" <u>Id.</u> at 264–65 (internal citations omitted).

30.     The court in <u>Canonigo</u> concluded that the latter interpretation, that Section 363(f)(5) did not apply to liens at all, was the most persuasive. In doing so, <u>Canonigo</u> followed <u>In re Beker Industries Corp.</u>, 63 B.R. 474, 478 (Bankr. S.D.N.Y. 1986), a prior decision from the

United States Bankruptcy Court for the Southern District of New York.  The court in <u>Canonigo</u> noted that while "this interpretation requires a narrower reading of the word 'interest' in Section 363(f)(5) than in Section 363(f)(3), any other approach requires an even more dramatic judicial gloss on the statute with a less sensible result."  <u>Canonigo</u>, 276 B.R. at 265.  Several bankruptcy courts, including the Middle District bankruptcy court in <u>Truesdale</u>, have disagreed with the provocative view espoused by the <u>Canonigo</u> and <u>Beker Industries</u> opinions.

31.    In <u>Truesdale</u>, the court concluded that "[it] does not believe that Section 363(f)(5) must be read to exclude liens in order to avoid such absurdity and to have all five subsections [of Section 363] work effectively and have non-redundant application."  <u>Truesdale</u>, No. 13-10941C-7G, slip op. at 10.  The court found that "there is no indication that Congress intended to exclude liens from the types of 'interests' addressed in Section 363(f)(5), and that the plain reading of the statute, along with the use of the term 'interest' elsewhere in the Code, demonstrates that liens are among those interests contemplated by Section 363(f)(5)."  <u>Id.</u> at 10–11.

32.    This same interpretation of the term "interests" under Section 363(f)(5) has also been reached by at least two other bankruptcy courts.  <u>See</u> <u>Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)</u>, 391 B.R. 25, 41–42 (B.A.P. 9th Cir. 2008) (concluding that the distinctions drawn by <u>Canonigo</u> are not supported by the plain reading of Section 363(f)(5) because (i) the introductory sentence of Section 363(f) broadly refers to "any interest," and the four paragraphs then refer to "such interest"; (ii) Section 363(f)(3) explicitly states that it applies only if "such interest is a lien," making it apparent that Congress intended a lien to be a type of interest, and Congress would have not used the language it did in paragraph (f)(3), or at least it would have included additional language in paragraph (f)(5), if it had intended to exclude liens from paragraph (f)(5); and (iii) the definition of "lien" under Section 101(37) of the Bankruptcy Code states it is a

"charge against or *interest* in property," providing an inference consistent with the interpretation that a lien is but one type of interest); and In re WBQ P'ship, 189 B.R. at 105 (agreeing that the term "interest" includes liens because Section 101(37) of the Bankruptcy Code defines the term "lien" as a "charge against or *interest* in property to secure payment of a debt or performance of an obligation").

33.    Based on the foregoing reasoning, the liens and interests of Nusbaum/White in this case qualify as "interests" under Section 363(f)(5).

**ii.    A Money Satisfaction Does Not Mean *Full* Satisfaction Under 11 U.S.C. § 365(f)(5)**

34.    In Truesdale, the court also noted that Canonigo's conclusion that Section 363(f)(5) was not intended to apply to liens (because it would be superfluous and "swallow-up" Section 363(f)(3)) was based on the incorrect assumption that Sections 363(f)(3) and (f)(5) require payment in full and satisfaction in full, respectively, of the affected interest from the proceeds of a sale in every instance. Truesdale, No. 13-10941C-7G, slip op. at 11–13. The Truesdale court found that such an assumption in Cannonigo is inaccurate. Id. at 13. By their plain terms, Sections 363(f)(3) and (f)(5) "do not involve a payment or satisfaction test at all." Id. at 12. Rather, Section 363(f)(3) "requires that, in order for a court to authorize a sale free and clear of liens, the sale 'price at which such property is to be sold [must be] *greater than the aggregate value of all liens on such property. . .*,'" not that the sale price is "sufficient to ensure that the liens are actually and ultimately *paid in full* from the proceeds of the sale." Id. (citations omitted) (emphasis added). Similarly, Section 363(f)(5) allows a sale free and clear of liens if an entity "could be compelled, in a legal or equitable proceeding, to accept a *money satisfaction* of such interest," 11 U.S.C. § 363(f)(5) (emphasis added), which, by its plain terms, does not require the *satisfaction in full* of

such interest.  In In re Healthco Int'l, Inc., the United States Bankruptcy Court for the District of

Massachusetts succinctly summarized the issue:

> I construe "money satisfaction of such interest" appearing in subparagraph (f)(5) to mean a payment constituting less than full payment of the underlying debt. Because any lien can always be discharged by full payment of the underlying debt, there would be no sense in subparagraph (f)(5) authorizing a sale only if that could be done.
>
> There is another reason why "money satisfaction of such lien interest" does not mean full payment of the underlying debt. If the phrase means full payment of the debt, subparagraph (f)(3) would then be superfluous. Subparagraph (f)(3) authorizes a sale free of liens if "the price at which such property is sold is greater than the aggregate value of all liens on such property." Conceivably this could mean the lien values as determined under section 506(a), which for a creditor whose security is completely under water would be zero. But that would make gibberish of (f)(3) because presumably the sales price (particularly if court-approved) is equal to the section 506(a) values, not greater than them. Subparagraph (f)(3) must therefore refer to the total underlying debt. When (f)(3) is so construed, subparagraph (f)(5) would be repetitious if it required the same payment in full.

In re Healthco Int'l, Inc., 174 B.R. 174, 176 (Bankr. D. Mass. 1994).

35.     As the bankruptcy court found in Truesdale, when Sections 363(f)(3) and (5) are

read this way, "the application of either of these sections does not 'swallow-up' the other, and, in

fact, all five subsections of 363(f) work cohesively, cooperatively, and without redundancy, as

illustrated by the facts in [Truesdale]."  Id. at 13–14.

36.     Pursuant to this interpretation, under Section 363(f)(3), a court cannot authorize a

sale free and clear unless the sale price is *greater than the aggregate value*[5] *of all liens on the

property*.  However, when Section 363(f)(3) does not apply because the sale price is insufficient

to cover the face amount of the liens—the situation in this case—"a court may still authorize the

sale under Section 363(f)(5) if the lienholder at issue can be compelled to have its lien satisfied in

a legal or equitable proceeding."  Id. at 14.  "Conversely, if there is no such mechanism [. . . ,]

---

[5] The bankruptcy court for the Middle District has construed the term "aggregate value" in Section 363(f)(3) to mean "full face value" of all claims secured by liens.  In re Truesdale, No. 13-10941C-7G, slip op. at 12.

Section 365(f)(5) would not permit the sale even if the sale price were greater than the face amount of the liens. In that case, a trustee would have to rely upon Section 363(f)(3)." Id. at 14–15.

37.     Numerous bankruptcy courts agree with Truesdale's interpretation of how Section 363(f)(5) interacts with Section 363(f)(3).  See, e.g., Clear Channel, 391 B.R. at 43 ("it is not the amount of the payment that is at issue [under Section 363(f)(5)], but rather, whether a 'mechanism exists to address extinguishing the lien or interest without paying such interest in full'") (citations omitted); In re Terrace Chalet Apartments Ltd., 159 B.R. 821, 829 (N.D. Ill. 1983) ("By its express terms, Section 363(f)(5) permits lien extinguishment if the trustee can demonstrate the existence of another legal mechanism by which a lien could be extinguished without full satisfaction of the secured debt."); In re Gulf States Steel, Inc. of Alabama, 285 B.R. 497, 508 (Bankr. N.D. Ala. 2002) (same); In re Ricco, Inc., No. 10-23, 2014 WL 1329292, at *3 (Bankr. N.D. W.Va. Apr. 1, 2014) ("Moreover, this court finds that 'the only logical interpretation . . . of § 365(f)(5) is that the statute requires that the trustee or debtor be the party able to compel monetary satisfaction of the interest which is the subject of the sale.'") (citations omitted).

38.     In Richardson v. Pitt County (In re Stroud Wholesale, Inc.), 983 F.2d 1057 (4th Cir. 1986) (per curiam), the Fourth Circuit affirmed—in an unpublished opinion—the ruling of the United States District Court for the Eastern District of North Carolina in In re Stroud Wholesale, Inc., 47 B.R. 999, 1003 (E.D.N.C. 1985), holding that *full payment* of liens is required in order to satisfy Section 363(f)(5) in a Chapter 7 liquidation scenario (rather than a Chapter 11 rehabilitation scenario).  In Stroud, a Chapter 7 trustee sought to sell assets free and clear of certain tax liens, relying in part on Section 363(f)(5).  Relying on legislative history, the District Court ruled that when a debtor was liquidating, "money satisfaction" under Section 363(f)(5) meant payment in full:

14

Although there is no express language in Section 363(f) which would indicate that "money satisfaction" should be interpreted differently depending on whether the sale is in a liquidation or rehabilitation case, such an interpretation is consistent with the purposes of the Code. To the extent that Section 363 involves sales in liquidation of the estate and out of the ordinary course of business, as in this case, it is the successor to Sections 70(f) and 70(g) of the Act and to Bankruptcy Rule 606 (superseded in 1978). Rule 606 set forth the type of proceeding which was required to sell property free and clear of interests for which the holder could be compelled to accept a "money satisfaction." The question of when an entity could be compelled to accept a "money satisfaction" was developed in case law. In areas such as dower rights and co-tenancies the case law was inconsistent. In the 1978 amendments to the Code Congress sought to clarify the law in these areas. Except for these few problem areas, the case law regarding the circumstances in which an entity could be compelled to accept a money satisfaction was well settled. That case law is now incorporated into section 363(f)1-(f)4. Thus, if section 363(f)5 is given the broad reading that the trustee suggests, (f)5 will not only swallow up (f)1-(f)4 but will also significantly change the case law which had developed over the years. There is no indication that Congress intended any such result. Therefore, the only reasonable interpretation of (f)5 is that "money satisfaction" means full satisfaction of creditors' interests in sales in liquidation of the estate.

Stroud Wholesale, Inc., 47 B.R. at 1002–1003 (internal citations omitted).

39.     Interestingly, the District Court in Stroud also concluded that "[t]his court's decision that (f)5 requires full monetary satisfaction of creditors' liens in liquidation cases does not mean that (f)5 would require full monetary satisfaction of creditors' liens in rehabilitation cases.  Trustees must be given flexibility in the difficult task of rehabilitating debtors while providing adequate protection for creditors' interests." Id.

40.     Stroud has been recognized as obsolete in that its conclusions were based on the mistaken assumption that Section 363 could be applied differently to "ordinary course" transactions in Chapter 11 versus "out of the ordinary course" liquidating sales in Chapter 7.  In fact, Section 363 applies equally to Chapter 7 as to Chapter 11 and should therefore have the same meaning throughout the Bankruptcy Code.[6]  See In re Grand Slam, U.S.A., Inc., 178 B.R. 460,

---

[6] See 11 U.S.C. § 103.  Even allowing for Stroud's mistake in the dichotomy of Section 363 between liquidation and rehabilitation cases, Stroud concludes that "equitable considerations may dictate that creditors receive less than full satisfaction of their interests" in rehabilitation cases.  Stroud, 47 B.R. at 1003.

461 (E.D. Mich. 1995) (noting <u>Stroud's</u> conclusion requiring full satisfaction of a lien under Section 363(f)(5) is "obsolete, inasmuch as it is inconsistent with the bankruptcy code"); <u>In re Healthco Int'l, Inc.</u>, 174 B.R. at 177 (rejecting <u>Stroud</u> as inconsistent and noting that "Section 363 applies in both chapters, see 11 U.S.C. § 103, and should therefore have the same meaning throughout the Code"); <u>In re Ricco, Inc.</u>, 2014 WL 1329292, at *fn. 4 ("Notably, the Fourth Circuit's affirmation of the district court in <u>Stroud</u> is unpublished. Because the Fourth Circuit generally disfavors citation to its unpublished dispositions issued before January 1, 2007, except for the purpose of establishing res judicata, estoppel, or the law of the case, this court likewise finds the Fourth Circuit's affirmation in <u>Stroud</u> to have no precedential, and little persuasive, value."); <u>Truesdale</u>, 13-10941C-7G, slip op. at 19–20, fn. 11 (noting that the Fourth Circuit affirmed the result in <u>Stroud</u> "while not necessarily agree[ing] with all that was said in the opinion. . .").

      iii.    **The Cramdown Provisions of Section 11 U.S.C. § 1129(b) Constitute a Legal Mechanism to Compel a Money a Satisfaction of a Lien Under 11 U.S.C. § 363(f)(5)**

         a.    <u>**Truesdale**</u> **Did Not Address the Applicability of the Cramdown Provisions of Section 11 U.S.C. § 1129(b) Under 11 U.S.C. § 363(f)(5)**

41.    In <u>Truesdale</u>, the bankruptcy court for the Middle District of North Carolina commented that "[d]etermining the extent and precise type of legal or equitable proceeding that provides a sufficient mechanism to extinguish a lien [. . .] has proven to be a Gordian Knot for the courts and commentators." <u>Truesdale</u>, No. 13-10941C-7G, slip op. at 15.

42.    <u>Truesdale</u> was an individual Chapter 7 case that dealt with the issue of whether the distribution scheme of Section 724(b) of the Bankruptcy Code was the type of legal or equitable mechanism that could be used under Section 363(f)(5) to compel the sale of real property free and clear of junior tax liens on the property.  <u>Id.</u> at 17.  The Court concluded "that Section 724(b) was

in fact the type of legal or equitable proceeding contemplated by Section 363(f)(5) under which a tax lienholder can be compelled to accept satisfaction of its lien." Id. at 21.

43.    Truesdale did not address whether the cramdown provisions of Section 1129(b) would provide an independent and sufficient mechanism that could be used under Section 363(f)(5), although the Court noted that the Bankruptcy Administrator had provided case law and legal authority to the Court that would in fact support that conclusion.[7] Id. at 16.  The Bankruptcy Administrator relied, *inter alia*, on In re Boston Generating, LLC, 440 B.R. 302, 333 (Bankr. S.D.N.Y. 2010), and Gulf States, 285 B.R. at 508, for the proposition that the cramdown provisions of Section 1129(b) constitute the type of procedural mechanism contemplated by Section 363(f)(5).  Id.  However, the Court also noted that Clear Channel had reached a different conclusion, "finding that the cramdown provisions of Section 1129(b) do not satisfy 363(f)(5) without requiring any of the procedural and substantive protections of confirmation."[8] Id.

44.    Ultimately, the Court determined that "it need not decide whether state foreclosure law or the cramdown provisions under Section 1129(b) are two of the potential types of proceedings contemplated by Congress under Section 363(f)(5) to permit sale free and clear of junior liens because the Court determines that Section 724(b) provides a sufficient procedural mechanism with respect to the tax liens at issue in [the] case." Id. at 17.  The Court also noted principles of judicial restraint as further reasons not to analyze the utility of Section 1129(b) or state foreclosure law as applied to Section 363(f)(5). Id. at 17, fn. 10 (citing PDK Labs., Inc. v. Drug Enforcement Admin., 362 F.3d 786, 799 (D.C. Cir. 2004) for the proposition that "'the

---

[7] The Bankruptcy Administrator also argued that North Carolina's foreclosure process, N.C. Gen. Stat. § 45-21.31, would be another legal or equitable mechanism by which junior tax liens could be extinguished from real property.

[8] Clear Channel was the only opinion cited by the Court in Truesdale that held that the cramdown provisions of Section 1129(b) did not provide a legal or equitable mechanism to compel money satisfaction of a lien under Section 363(f)(5).

cardinal principle of judicial restraint' is that 'if it is not necessary to decide more, it is necessary not to decide more'").

45.     The issue of whether the cramdown provisions of Section 1129(b) provide a legal or equitable mechanism in a Chapter 11 case to compel a money satisfaction of a lien under Section 363(f)(5) is now squarely before the Court.  The Trustee believes that the cramdown provisions of Section 1129(b) do in fact provide such mechanism under Section 363(f)(5), and <u>Clear Channel's</u> conclusions to the contrary are erroneous.

**b.  <u>Clear Channel's</u> Holding that the Cramdown Provisions of Section 11 U.S.C. § 1129(b) Do Not Apply to 11 U.S.C. § 363(f)(5) is Erroneous**

46.     In <u>Clear Channel</u>, a Chapter 11 Trustee—in cooperation with the Debtor's main secured lender—sought to sell all the debtor's assets under Section 363.  <u>Clear Channel</u>, 391 B.R. at 30.  At the sale, the debtor's main secured lender was the highest bidder, paying its consideration by credit-bidding the entire amount of its debt, approximately $40 million.  <u>Id.</u> However, the Debtor's assets were not only encumbered by the main secured lender, but also by a consensual lien in favor of a junior creditor, Clear Channel Outdoor, Inc. ("<u>Clear Channel</u>"), securing a claim of approximately $2.5 million.  <u>Id.</u>  Relying solely on Section 363(f)(5), the bankruptcy court confirmed the sale to the main secured lender free and clear of Clear Channel's lien.  <u>Id.</u>  The case was appealed to the United States Bankruptcy Appellate Panel of the Ninth Circuit (the "<u>BAP</u>"). <u>Id.</u>

47.     The BAP concluded that Section 363(f)(5) could not support a transfer of the debtor's property free and clear of Clear Channel's lien.  <u>Id.</u>  In so finding, the BAP agreed that (i) an "interest" under Section 363(f)(5) included the type of lien held by Clear Channel and (ii) that a "money satisfaction" under Section 363(f)(5) did not require full satisfaction.  <u>Id.</u> at 41–45. Therefore, the issue turned on whether "mechanism exists to address extinguishing the lien or

interest without paying such interest in full," and how satisfaction of that lien "could be compelled." Id. at 43–45.

48.     The Chapter 11 trustee noted that Section 1129(b) was such a qualifying legal or equitable proceeding and offered several cases in support of that position, including Gulf States, Grand Slam USA, Healthco, and Terrace Chalet Apts.  Id. at 46.  The BAP disagreed with the Chapter 11 trustee.  Relying on the analysis of 3 Collier on Bankruptcy, at ¶ 363.06[6], the BAP stated that "use of the cramdown mechanism to allow a sale free and clear under § 363(f)(5) uses circular reasoning—it sanctions the effect of cramdown without requiring any of § 1129(b)'s substantive and procedural protections." Id. (internal citations omitted).  The BAP noted that "[i]f the proceeding authorizing the satisfaction was found elsewhere in the Bankruptcy Code, then an estate would not need § 365(f)(5) at all; it would simply use the other Code provision." Id.  The BAP stated further that the procedure to compel satisfaction of the lien must be found outside of the Bankruptcy Code: "Neither the Trustee nor [the main secured lender] has directed us to any such proceeding under nonbankruptcy law, and the bankruptcy court made no such finding." Id.

49.     In addition, the BAP noted that utilizing Section 1129(b) as a legal or equitable mechanism to effectuate a money satisfaction under Section 365(f)(5) "undercuts the required showing of a separate proceeding." Id.  The BAP agreed that "Section 1129(b)(2) permits a cramdown of a lien to the value of the collateral, but it does so only in the context of plan confirmation." Id.  The BAP concluded that "[t]o isolate and separate the cramdown from the checks and balances inherent in the plan process undermines the entire confirmation process, and courts have been leery of using § 363(b) to gut plan confirmation or render it superfluous." Id.

50.     In Truesdale, the bankruptcy court disagreed with the BAP's (and Collier's) observation that allowing either Section 1129(b) or any other Bankruptcy Code provision to satisfy

19

the legal or equitable mechanism of Section 363(f)(5) "uses circular reasoning." Truesdale, No. 13-10941C-7G, slip op. at 20.  "This observation," the Court noted, "conflates effectuating a sale free and clear of liens to 'satisfaction' of the affected interest through a legal or equitable procedure as contemplated by Section 363(f)(5)." Id.  In other words, Section 365(f)(5) in and of itself does not permit a sale free and clear of liens by "satisfying" those liens; rather, the remedy in Section 363(f)(5) is conditioned on the existence of a legal or equitable mechanism found elsewhere in nonbankruptcy law or the Bankruptcy Code (like the cramdown provisions of Section 1129(b) that could compel the money satisfaction of a lien.  As the court in Healthco noted, this is exactly what makes Section 363(f)(5) "a bit of a conundrum":

> In opposition of the interpretation I make here, one might contend Congress could have not intended the subparagraph [(f)(5)] to be conditioned on the existence of a remedy in the Bankruptcy Code which it necessarily knew existed. Also, the referenced 'legal or equitable' proceeding is admittedly a rather obtuse way of referring to a bankruptcy remedy. These considerations lose force, however, in light of the wording of subparagraph (f)(1). There the statute refers to 'applicable nonbankruptcy law.' If Congress intended (f)(5) to exclude bankruptcy law, Congress would have presumably have used the same phrase.

In re Healthco Int'l, Inc., 174 B.R. at 176–77.

51.     To the court in Truesdale, however, "this is the correct distinction" that takes into the account "the type of legal or equitable proceeding contemplated by Section 365(f)(5) under which a [lienholder] can be compelled to accept satisfaction of its lien." Id. at 21.

52.     Further, in Truesdale, the court did not find any "logical or textual reason" for the BAP's conclusion in Clear Channel that the procedure to compel satisfaction of the lien under Section 363(f)(5) must be found outside the Bankruptcy Code.  Id. at 20, fn. 12.  Similar to the conclusion reached by the court in In re Healthco, the bankruptcy court noted that while "Section 363(f)(1) specifically contemplates that a sale may be free and clear of liens and interests if 'non-bankruptcy law permits sale of such property free and clear of such interests'," Section 363(f)(5)

contains no such 'nonbankruptcy law' requirement. Id. "Therefore, if Congress intended to limit Section 363(f)(5) to non-bankruptcy law, it obviously could have done so as it expressly did in Section 363(f)(1)." Id.

53.    Other than its reliance on Collier's analysis and its own analysis, the BAP did not offer any case law or statutory support for the proposition that Section 1129(b)(2) permits cramdown of a lien only in the context of plan confirmation and not in the context of Section 363(f)(5).

54.    As the court in Healthco noted, "[i]t would be anomalous [. . .] if the bankruptcy estate could deal with an undersecured claim under Sections 506(a) and 1129(b)(2), or subordinate a tax lien under Section 724(b), but be unable to sell the collateral at a fair price without paying the claimant in full." Id. at 177.  Ultimately, the effect of the cramdown provisions of Section 1129(b) work the same whether those provisions are used through the Chapter 11 plan process or in a sale pursuant to Section 363(f)(5).  Just like Nusbaum/White have the ability to vote to accept or reject a plan in the Chapter 11 plan confirmation process, Nusbaum/White have the ability to object to a Section 363 sale—as they have done in this case.

55.    Clear Channel's denial of the applicability of cramdown under Section 1129(b) under Section 363(f)(5) has been severely criticized by commentators, courts in other circuits, and even by a bankruptcy court within the Ninth Circuit:

> Although Clear Channel has generated considerable commentary, it has only been cited by courts in three published opinions: by the Panel itself, respecting standards of review and the mootness analysis, in In re Kekauoha–Alisa, 2009 WL 1080708, at *4 (B.A.P. 9th Cir. 8 Apr 2009) and In re Gould, 401 B.R. 415, 421 (B.A.P. 9th Cir. 2009), and in an able and comprehensive discussion of the propriety of § 363 sales, in In re Gulf Coast Oil Corp., 404 B.R. 407, 420–21, 2009 WL 361741, at *9 (Bankr. S.D. Tex. 2009).

In re Jolan, 403 B.R. 866, 869 (Bankr. W.D. Wash. 2009). See also Frank A. Oswald and Andy Winchell, Missing the Forest for the Trees in § 363: How the Ninth Circuit's Bankruptcy Appellate Panel Neglected the Big Picture in the Clear Channel Decision, 4 Norton Bankr. L. Adviser 2 (April 2009); Marguerite Lee De Voll, Comment, Neither "Free" Nor "Clear": The Real Costs of In re PW, LLC: A Look at § 363(f)(3) and How to Protect Creditors, 26 Emory Bankr. Dev. J. 167 (2009).

56.    A handful of courts agree with the holding in Clear Channel that debtors cannot use the cramdown provisions of Section 1129(b) to support a sale free and clear of a creditor's lien under Section 363(f)(5).  For example, in In re Takeout Taxi Holdings, Inc., the bankruptcy court held that "[subsection (f)(5)] ought not to be construed so broadly as to become a sufficient basis to always permit the sale of any property subject to a security interest," that "[s]uch a broad construction would always enable a trustee to sell the collateral over the objection of the secured creditor for an amount insufficient to pay the secured creditor in full even where there is no bona fide dispute," and that "Section 363(f)(5) has a different purpose [. . .] intended for interests other than typical monetary liens." In re Takeout Taxi Holdings, Inc., 307 B.R. 525, 533–34 (Bankr. E.D. Va. 2004).  The conclusions in Takeout Taxi, however, are based on an incorrect analysis of Section 363(f)(5).  As discussed, monetary liens are in fact included in the definition of "interests" under Section 363(f)(5) and under Section 101(37).  Further, the correct interpretation of the terms "compel" and "money satisfaction" do not dictate *full* satisfaction of a creditor's lien by operation of Section 363(f)(5), but rather, ask the question of whether a separate legal or equitable mechanism exists either under bankruptcy or nonbankruptcy law to achieve a *money* satisfaction of a creditor's interest.  Read that way, Section 363(f)(5) does not "consume subsections 2, 3, and

4" and does not "upset the balance Congress intended" as noted in <u>Takeout Taxi</u>. The interpretation of Section 363(f)(5) by the court in <u>Takeout Taxi</u> is therefore flawed.

57.     Likewise, in <u>In re Harris</u>, the bankruptcy court rejected the use of the cramdown provisions of Section 1129(b) as a legal and equitable mechanism under Section 363(f)(5) to compel a secured creditor to accept a money satisfaction of its lien.  No. 10-74280, 2011 WL 5508861, at *2–4 (Bankr. E.D. Mich. Nov. 7, 2011).  However, the <u>Harris</u> case is distinguishable on its facts since that case dealt with an <u>individual</u> Chapter 11 debtor, and the court's reasoning was explicitly based on the fact that in an individual Chapter 11 case, Section 1123(a)(5)(D) precludes a cramdown of a claim that is secured by a debtor's principal residence).  <u>Id.</u> at *2. Section 1123(a)(5)(D) does not apply to business reorganization cases like this one.

58.     Finally, in <u>In re Ferris Properties</u>, the United States Bankruptcy Court for the District of Delaware noted that courts disagreed as to whether Section 1129(b) is a legal proceeding by which a sale proponent could satisfy Section 363(f)(5).  No. 14-1049, 2015 WL 4600248, at *2–3 (Bankr. D. Del. Jul. 30, 2015).  The court further posed the issue of what exactly a sale proponent must show under Section 363(f)(5), i.e., is it merely enough "to show that it is theoretically possible to compel a creditor to accept a money satisfaction under Section 363(f)(5)," or whether the proponent actually "must demonstrate how satisfaction of the lien could be compelled."  <u>Id.</u> at *2.  <u>Compare</u> <u>In re WBQ Partnership</u>, 189 B.R. at 107 ("Accordingly, we conclude that DMAS's interest can be reduced to a claim, and is therefore subject to a hypothetical money satisfaction under 11 U.S.C. § 363(f)(5). We emphasize 'hypothetical' satisfaction, since § 363(f)(5) authorizes a sale if the interest holder '*could* be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.'") (emphasis in original) *with* <u>In re Terrace Chalet Apartments Ltd.</u>, 159 B.R 829 (requiring a debtor to demonstrate how a creditor

23

could be compelled to accept satisfaction of its interest by § 1129(b) "cramdown") and In re Haskell, L.P., 321 B.R. 1, 8–9 (Bankr. D. Mass. 2005) (rejecting the argument that debtors need only show that it is theoretically possible to compel a party under § 363(f)(5)). The Ferris Properties court made no ruling as to whether Section 1129(b) is in fact a legal proceeding within the meaning of Section 363(f)(5), but rather, concluded that the debtor did not made the adequate showing that it in fact could cram down the secured creditor under the elements of Section 1129(b)(2)(A). Id.

   c.    **The Trustee Can Demonstrate how Nusbaum/White's Asserted Liens on the Debtor's Assets Could be Crammed Down under Section 1129(b)(2)(A)(ii)**

59.    Section 1129(b)(1) provides that a trustee can confirm a bankruptcy plan over the objection of an impaired, non-consenting class of claims if the plan does not discriminate unfairly, and is fair and equitable, with respect to that class. 11 U.S.C. § 1129(b)(1). Section 1129(b)(2)(A) provides that a plan is "fair and equitable" with respect to a class of secured claims if the plan provides:

   (i)    (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

   (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

   (ii) for the sale, subject to section 363(k) of [the Bankruptcy Code], of any property that is subject to the liens securing the claims, free and clear of such liens, with such liens to attach to the proceeds of such sale; and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

   (iii) for the realization by such holders of the indubitable equivalent of such claims.

11 U.S.C. 1129(b)(2)(A).

24

60.    In this case, under Section 1129(b)(2)(A)(ii), the Trustee could provide for the sale of the relevant assets that are subject to the liens of Nusbaum/White securing their claims, free and clear of such liens, with such liens to attach to the proceeds of the Sale. The liens of Nusbaum/White on the proceeds of the Sale would then be treated under Section 1129(b)(2)(A)(i)(I), meaning that Nusbaum/White retain the liens securing their claims only to the extent of the allowed amount of their claims.    The allowed amounts of the claims of Nusbaum/White, in turn, are determined under Section 506(a) of the Bankruptcy Code, which states that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest [. . .] *is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property* [. . .] and is an unsecured claim to the extent that the value of such creditor's interest [. . .] is less that the amount of such allowed claim." 11 U.S.C. § 506(a) (emphasis added). Further, under Section 506(d) of the Bankruptcy Code, to the extent that the liens of Nusbaum/White secure a claim against the Debtor that is not *an allowed claim*, such liens are void.  11 U.S.C. § 506(d).[9]  Accordingly, Section 1129(b)(2)(A)(ii) provides the legal mechanism through which Nusbaum/White can be compelled to accept a money satisfaction of their interests in the Transferred Asserts pursuant to Section 363(f)(5).

61.    The Trustee asserts that the better reasoned opinions allow the use of the cramdown provisions of Section 1129(b) to apply as a legal or equitable mechanism by which a creditor could

---

[9] In Dewsnup v. Timm, 502 U.S. 410 (1992), the United States Supreme Court held that a debtor cannot strip down a consensual lien in a Chapter 7 case.  The effect of Dewsnup is that a Chapter 7 debtor cannot use Section 506(d) to reduce an undersecured claim to the present value of the collateral as judicially determined in a bankruptcy case. However, the Supreme Court was concerned only with a consensual lien in a Chapter 7 case and did not indicate if the same result would apply outside of Chapter 7 or to a nonconsensual lien.  Most subsequent lower court decisions have extended Dewsnup only to nonconsensual liens in Chapter 7 cases.  See, e.g., In re Concannon, 338 B.R. 90 (B.A.P. 9th Cir. 2006).  Subsequent case law has not applied Dewsnup to reorganization cases under Chapter 11. Courts have pointed out that Dewsnup is not reconcilable with the different approach to undersecured claims in a Chapter 11 case and should therefore not be extended beyond its Chapter 7 context.  See, e.g., In re Heritage Highgate, Inc., 679 F.3d 132 (3d. Cir. 2012); In re Johnson, 386 B.R. 171 (Bankr. W.D. Pa. 2008).

25

be compelled to accept a money satisfaction of its liens under Section 363(f)(5). See, e.g., Gulf States, 285 B.R. at 508 (approving Chapter 7 Trustee's motion for sale of debtor's real property free and client of junior claims, liens, or interests, as well as tax liens, utilizing the cramdown provisions of Section 1129(b) and the lien subordination provisions of Section 724(b) under Section 363(f)(5)); In re Terrace Chalet Apartments Ltd., 159 B.R. at 829–30 (holding that Chapter 11 business debtor can sell real property free of junior lien if it demonstrates that it can cram down the creditor pursuant to Section 1129(b)(2), and remanding the case to the bankruptcy court so that it could determine whether the debtor can indeed satisfy the requirements of Section 1129(b)(2)); In re Healthco Int'l, Inc., 174 B.R. at 175–77 (allowing sale of real property by trustee in Chapter 7 case pursuant to Section 363(f)(5) free and clear of tax lien pursuant to both Sections 724(b) and 1129(b)(2)); In re Ricco, 2014 WL 1329292, at *3–4 (allowing Chapter 11 trustee's motion to sell real property free and clear of liens under Section 363(f)(5) pursuant to Section 1129(b)(2)).

62.    Thus, because Sections 363(f)(4) and 363(f)(5) of the Bankruptcy Code provide separate, adequate grounds for permitting the sale of the Debtor's assets free and clear of any lien, claim, interest, or encumbrance asserted by Nusbaum/White, the Trustee should be permitted to do so, and the objection of Nusbaum/White should be overruled.

### *The Cohesive Objection*

63.    The Trustee asserts that he can sell the relevant Debtors' assets free and clear of Cohesive's asserted liens pursuant to Section 363(f)(5). The same rationale applies as does with respect to Nusbaum/White and as discussed in greater detail above.

### *The CBSG Objection v. the Nusbaum/White Objection v. the Cohesive Objection*

64.     In the CAH 7 Case, the CAH 12 Case, and the CAH 16 Case, it appears that a dispute has arisen between CBSG, Cohesive, and Nusbaum/White as to the relative extent, validity, and priority of their respective asserted liens and obligations.  A similar dispute has arisen between CBSG and Nusbaum/White in the CAH 2 Case and the CAH 3 case.  Those disputes involve, among other things, the existence, validity, and priority of the parties' asserted liens.  Such disputes satisfy the "bona fide dispute" requirement of Section 363(f)(4).  As one court has stated:

> Section 363(f)(4), which is based upon cases decided under the old Bankruptcy Act, provides for the situation where adjudication of the validity, perfection, amount and priority of a lien will result in a delay detrimental to the best interests of the estate. See Collier, 15th Ed., P 363.01(1). In such case the Court, after a finding that "such interest is in bona fide dispute," may, over the objection of a holder of such interest, order a sale free and clear of such interest, subject to a later resolution of the dispute prior to distribution of the proceeds from the sale.

In re Farina, 9 B.R. 726, 729 (Bankr. D. Me. 1981).  Delaying the sales to resolve the disputes between these parties would seriously and detrimentally affect the estate and the possible distributions to these creditors.  The operating facilities would likely need to close pending the resolution of these disputes, thus significantly decreasing their values and significantly affecting the amount available to distribute to these parties.

### *The USDHHS Objection and the NCDHHS Objection*

65.     USDHHS and NCDHHS contend that the Debtor, by seeking a ruling characterizing the Provider Agreements as statutory entitlements and not an executory contracts, improperly seeks the benefits of assigning the Provider Agreements without the responsibility of curing any potential liabilities for overpayment under Section 365 of the Bankruptcy Code or providing that the assignee of such Provider Agreement shall remain responsible for any potential overpayment liabilities.

66.     The Trustee does not concede the point of USDHHS.  However, it appears that all purchasers are or will be willing to take assignment of the Provider Agreement subject to any successor liability (in the case of the four operating facilities in the CAH 1 Case, the CAH 7 Case, the CAH 12 Case, and the CAH 16 Case), or the Trustee does not propose to transfer the Provider Agreement (for the three non-operating facilities in the CAH 2 Case, the CAH 3 Case, and the CAH 6 Case).  As such, the issues raised in the NCDHHS Objection and the USDHHS Objection appear likely to become moot.

67.     Each of the proposed asset purchase agreements, except for that in the CAH 12 Case, expressly provide that the purchaser will take subject to successor liability to USDHHS and, in the CAH 1 Case, to NCDHHS.  If the purchaser in the CAH 12 Case does not agree to successor liability, the Trustee hereby incorporates by reference those portions of the Trustee's brief applicable to transferring a provider agreement free and clear of successor liability.

68.     The positions argued by numerous state and federal agencies over the past several decades, as noted in the Trustee's Brief, is the position asserted as inequitable in the USDHHS Objection: that the Debtor seeks the benefits of the Provider Agreement without the downsides.  But, when a provider brings a non-bankruptcy action against the government to enforce the provisions of a Provider Agreement under contract law—e.g., when the government retroactively reduces reimbursement levels or changes regulations to eliminate reimbursements previously provided under statutes and regulations—government agencies have time-and-again asserted that Provider Agreements are not contracts between parties, but statutory and regulatory programs providing reimbursements to compliant providers.  When a provider files for bankruptcy protection, however, those government agencies reverse course, asserting that a Provider Agreement must receive treatment as an executory contract.

28

69.     To the extent the USDHHS argues that the absence of a statute or CMS regulation providing for assumption free-and-clear precludes the application of Section 365(f) of the Bankruptcy Code to the Provider Agreement, such a position is contrary to the plain language of the Bankruptcy Code.  If all government licensing programs or executory contracts required explicit permission to assign such properties free-and-clear in bankruptcy, then Section 365(f) would have no purpose beyond giving those terms effect.  Therefore, the USDHHS Objection should be overruled.

### *The First Capital Objection*

70.     At the closing of the sale, the Trustee intends to pay First Capital in full on both its pre- and post-petition obligations.  Such treatment fully addresses the issues raised in the First Capital Objection.

### *The Sun Finance Objection*

71.     Sun Finance objected to the sale primarily on the basis that it believed the Trustee would receive an insufficient amount for the accounts receivable.  The Trustee will not transfer the accounts receivable as part of the sale.  The Trustee further intends to collect such accounts receivable in accordance with the framework set out in the proposed Chapter 11 Plan.  The Trustee further agrees to pay Sun Finance at closing approximately $68,000, the amount of funds on hand on the petition date in the CAH 6 case and which was cash collateral subject to the Sun Finance lien.  The Trustee believes that such provisions fully address the Sun Finance Objection.

### CONCLUSION

72.     For the foregoing reasons, the Trustee respectfully requests that the Court overrule each of the Sale Objections, enter appropriate Sale Orders permitting the Trustee to sell the assets of the Debtor free and clear of liens, claims, interests, or encumbrances (other than successor

liability under a Provider Agreement), and grant any such other and further relief as this Court deems just and proper.

Respectfully submitted, this the 14th day of January, 2020.

**WALDREP LLP**

/s/ *James C. Lanik*
Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
James C. Lanik (NC State Bar No. 30454)
Jennifer B. Lyday (NC Bar No. 39871)
Francisco T. Morales (NC Bar No. 43079)
101 S. Stratford Road, Suite 210
Winston-Salem, NC 27104
Telephone: 336-717-1440
Telefax: 336-717-1340
Email: notice@waldrepllp.com

**- and –**

**HENDREN, REDWINE & MALONE, PLLC**

Jason L. Hendren (NC State Bar No. 26869)
Rebecca F. Redwine (NC Bar No. 37012)
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: 919-420-7867
Telefax: 919-420-0475
Email: jhendren@hendrenmalone.com
        rredwine@hendrenmalone.com

*Attorneys for the Trustee*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing **OMNIBUS BRIEF IN REPLY TO OBJECTIONS TO TRUSTEE'S MOTION FOR (I) AN ORDER (A) ESTABLISHING BIDDING PROCEDURES, (B) APPROVING FORM AND MANNER OF NOTICES, (C) SCHEDULING HEARING TO CONSIDER FINAL APPROVAL OF SALE AND TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (D) GRANTING RELATED RELIEF; AND (II) AN ORDER (A) APPROVING SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF** was filed electronically in accordance with the local rules and was served upon those listed on **Exhibit A** attached hereto on the date set forth by first class mail or by electronic service through CM/ECF.

Dated: January 14th, 2020

**WALDREP LLP**

/s/ *James C. Lanik*
Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
James C. Lanik (NC State Bar No. 30454)
Jennifer B. Lyday (NC Bar No. 39871)
Francisco T. Morales (NC Bar No. 43079)
101 S. Stratford Road, Suite 210
Winston-Salem, NC 27104
Telephone: 336-717-1440
Telefax: 336-717-1340
Email: notice@waldrepllp.com

*Attorneys for the Trustee*

**EXHIBIT A**

**VIA Electronic Service**

**VIA CM/ECF**

Rayford K. Adams, III on behalf of Debtor

Jason L. Hendren on behalf of Trustee Thomas W. Waldrep, Jr.

Rebecca F. Redwine on behalf of Trustee Thomas W. Waldrep, Jr.

Benjamin E.F.B. Waller on behalf of Trustee Thomas W. Waldrep, Jr.

James C. Lanik on behalf of Trustee Thomas W. Waldrep, Jr.

Jennifer B. Lyday on behalf of Trustee Thomas W. Waldrep, Jr.

Francisco T. Morales on behalf of Trustee Thomas W. Waldrep, Jr.

Thomas W. Waldrep, Jr. on behalf of Trustee Thomas W. Waldrep, Jr.

Marjorie K. Lynch on behalf of Bankruptcy Administrator Marjorie K. Lynch

Kirstin E. Gardner on behalf of Bankruptcy Administrator Marjorie K. Lynch

Brian Behr on behalf of Bankruptcy Administrator Marjorie K. Lynch

John Paul H. Cournoyer on behalf of Creditor Sun Finance, Inc., Creditor Paul L. Nusbaum, Creditor Steven F. White, and Interested Party Rural Community Hospitals of America, LLC

Lara S. Martin, Esquire, on behalf of Creditor, Beckman Coulter, Inc.

Sam G. Bratton, II on behalf of Debtor CAH Acquisition Company 12, LLC and Interested Party Doerner, Saunders, Daniel & Anderson, LLP

Brian R. Anderson on behalf of Health Care Ombudsman Suzanne Koenig

Nancy A. Peterman on behalf of Health Care Ombudsman Suzanne Koenig

Dennis M. Duffy on behalf of Creditors United States Department of Health and Human Services