# EXHIBIT 1

## TO OMNIBUS BRIEF IN REPLY TO OBJECTIONS



## HIGH PERFORMANCE LAW™

William Walt Pettit
Attorney at Law
Phone: 704-362-9255
Fax: 704-362-9268
Email: walt.pettit@hutchenslawfirm.com
https://HutchensLawFirm.com

Offices In:
FAYETTEVILLE, CHARLOTTE, WILMINGTON, NC | COLUMBIA, SC

6230 Fairview Road, Suite 315
Charlotte, NC 28210-3253

P.O. Box 12497
Charlotte, NC 28220-2497

December 31, 2019

Jason L. Hendren, Esq.
Benjamin E.F.B. Waller, Esq.
Hendren, Redwine & Malone, PLLC
4600 Marriott Drive, Suite 150
Raleigh, NC 27612

James C. Lanik, Esq.
Waldrep, LLP
101 S. Stratford Road, Suite 210
Winston-Salem, NC 27104

John Paul H. Cournoyer, Esq.
Northen Blue, LLP
1414 Raleigh Road, Suite 435
Chapel Hill, NC 27517

Re: Factoring Agreements dated November 7, 2018[1] and December 10, 2018 and Security Agreements between Complete Business Solutions Group, Inc. ("CBSG") and Health Acquisition Company LLC ("HAC") dba CAH Acquisition Company #12 LLC dba Fairfax Community Hospital ("CAH 12") dba CAH Acquisition Company #16 LLC dba Haskell County Community Hospital ("CAH 16") dba CAH Acquisition Company #7 LLC dba Prague Community Hospital ("CAH 7") dba CAH Acquisition Company #3 LLC dba Horton Community Hospital ("CAH 3") dba CAH Acquisition Company #6 LLC dba I-70 Community Hospital ("CAH 6") dba CAH Acquisition Company #1 LLC dba Washington County Hospital ("CAH 1") (the "Factoring Transaction")

Gentlemen:

I hope this letter finds you all doing well and enjoying your holiday season. As you know, I represent CBSG in connection with the Factoring Transaction referenced above. Pursuant to the terms of the Factoring Agreements and for valuable consideration, HAC,

---

[1] The Factoring Agreement dated November 7, 2018 was misdated, and was actually entered into on December 7, 2018. For ease of reference, however, it will be referred to herein generally as the "Factoring Agreement dated November 7, 2018."

CAH 12, CAH 16, CAH 7, CAH 3, CAH 6, and CAH 1 (collectively "Seller/Merchant" or "Seller/Merchant entities") sold, assigned and transferred to CBSG all of Seller/Merchant's future receipts, accounts, contract rights and other obligations arising from or relating to the payment of monies from Seller/Merchant's customers and/or other third party payers (collectively the "Receipts") until such time as the "Receipts Purchased Amount (RPA)" was delivered by Seller/Merchant to CBSG[2]. CBSG paid Seller/Merchant $500,000.00 for the Receipts set forth in the Factoring Agreement dated November 7, 2018 and $6,532,155.00 for the Receipts set forth in the Factoring Agreement dated December 10, 2018. The Factoring Agreements make abundantly clear that the Receipts were actually sold to CBSG for value, and that CBSG, as the clearly-stated Purchaser of those Receipts, would own them after the transfer. Indeed, because the RPAs were never paid, CBSG still owns the Receipts.

The Factoring Agreements were signed by Jorge Perez who is an authorized representative of, and had the authority to bind, each of the Seller/Merchant entities. In connection with the Factoring Transaction, Jorge Perez also executed Security Agreements on behalf of the Seller/Merchant thereby granting CBSG a security interest in (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments and inventory, now or hereafter acquired by Seller/Merchant, and (b) all proceeds (collectively the "Collateral"). Jorge Perez guaranteed to CBSG the Seller/Merchant's performance of all of the representations and warranties made by Seller/Merchant regarding the Factoring Transaction.

As you know, the Trustee in CAH 12's bankruptcy case has filed an adversary proceeding asserting that the Factoring Transaction constitutes a voidable and preferential transfer to CBSG. We believe that the adversary proceeding is flawed in that it ignores that the Factoring Transaction was between CBSG and *all* of the Seller/Merchant entities. CBSG has raised additional affirmative defenses in its answer to the adversary proceeding complaint which it intends to litigate.

For purposes under Rule 408 of the Federal Rules of Evidence and for settlement discussion purposes only, CBSG believes as follows:

(1) That the Trustee will be successful in avoiding any lien on the personal property of any CAH entity described in the Factoring Agreement since the UCC-1 Financing Statement was not properly filed as required by law;
(2) That the Trustee will not succeed in avoiding the lien on the real property located in Fairfax County, Oklahoma since the security instrument was recorded within thirty days from the date of execution of the Factoring Agreement. See 11 U.S.C. § 547(c)(1), (3) and (4);
(3) That as to the claims for relief pursuant to 11 U.S.C. § 548, CBSG believes that it will be able to show that the Debtor received reasonably equivalent value for

---

[2] The RPA for the Factoring Agreement dated November 7, 2018 is $645,000.00; and the RPA for the Factoring Agreement dated December 10, 2018 is $9,471,624.75. The Merchant/Seller never paid the RPAs to CBSG which, accordingly, still owns the Receipts.

any number of reasons, including the fact that the funds from the Factoring Agreement were used to pay all expenses of the Debtor and other CAH entities.

Moreover, the evidence we have thus far gathered suggests that the Seller/Merchant entities have no real separate corporate identity of their own, and are merely the alter egos of one another. Among other things, they share common shareholders, officers, and directors; commingled assets and finances; and generally failed to follow corporate formalities. Indeed, it appears that the shareholders, officers, and directors of the Seller/Merchant entities may have abused their powers and fiduciary duties for their own personal gain.

Separately, Paul Nusbaum and Steve White (collectively "Nusbaum and White") contend that they are secured creditors of CAH 3, CAH 7, CAH 12, CAH 16 and other related entities[3] by virtue of a $6,000,000.00 secured Note (the "Gemino Note") originally payable to Gemino Healthcare Finance, LLC ("Gemino"). In March 2012, Gemino allegedly assigned the Gemino Note to HMC/CAH Note Acquisition, LLC which, in 2017, then assigned it to HAC. Nusbaum and White own a 50% interest in HAC; and Jorge Perez, Ricardo Perez, and Carlos Perez (collectively the "Perezes") own the remaining 50% interest. In March 2019, HAC allegedly then assigned the Gemino Note to its individual members (Nusbaum and White and the Perezes), and the Perezes then assigned their interest in the Gemino Note to Nusbaum and White who now claim a 100% ownership interest therein.

When the Seller/Merchant entered into the Factoring Transaction with CBSG, HAC owned the Gemino Note. Accordingly, the Gemino Note is part of the Collateral described in the Security Agreements executed by Seller/Merchant in favor of CBSG. In other words, CBSG has a security interest in the Gemino Note, and its proceeds, which is an "instrument" specifically set forth in the Security Agreement. Both Nusbaum White were the managing members of HAC and thus did not acquire the Gemino Note as a bonafide purchaser for value. Notwithstanding the transfer, we believe that CBSG continues to have a security interest in the Note.

This letter shall serve as notice that, unless a resolution is reached among CBSG, the Seller/Merchant entities, and Nusbaum and White, then CBSG intends to file a Motion to Amend its Answer and Affirmative Defenses and seek the file the following claims:

(1) CBSG will file an action against all of the CAH entities alleging that they are all alter egos of HAC;
(2) CBSG will file various claims against HAC as follows: (a) for the balance due under the various Factoring Agreements; (b) for turnover of the Receipts which it purchased under the various Factoring Agreements; (c) for possession of all personal property in which it has a security interest including the instrument referenced hereinabove also known as the Gemino Note.

---

[3] The other entitles allegedly indebted on the Note are HMC/CAH Consolidated, Inc.; HMC Management Company, LLC; CAH Acquisition Company #2, LLC; CAH Acquisition Company #5, LLC; CAH Acquisition Company #9, LLC; CAH Acquisition Company #10, LLC; and CAH Acquisition Company #11, LLC.

We are required to file a Motion to Amend within three weeks from the Pre-Conference Report. By my calculations, this requires that CBSG amend its Answer by January 10, 2020. Thus, we would appreciate your letting us know whether the Trustee, Nusbaum and White, or HAC has any intention to resolve this matter amicably, and would request that you make any proposal by January 8, 2020.

With best regards, I am

                                      Very truly yours,
                                      HUTCHENS LAW FIRM LLP

                                      William Walt Pettit

WWP/ drs